WILLIAM J. DOOLEY, APPELLANT, v. NATHAN KUSHIN AND SAMUEL GOLDSTEIN, RESPONDENTS.

Argued February 6, 1929—Decided May 20, 1929.

596

For the appellant, *Waddington & Mathews.*

For the respondents, *Cassman & Gottlieb* and *Robert H. McCarter.*

The opinion of the court was delivered by

CASE, J.   This is an appeal from a judgment entered in favor of the defendants by Circuit Court Judge Sooy before whom, without a jury, the case was tried.   The plaintiff brought suit for the recovery of $15,000, being two down payments on a contract to purchase real estate.

On October 24th, 1925, William J. Dooley, the vendee, plaintiff below, entered into a written contract with the vendors, defendants below, whereby he undertook to buy, and they to convey by deed of special warranty, free from all encumbrances except as mentioned, on or before January 5th, 1926, a boardwalk property in Atlantic City for the sum of $1,150,000 payable $7,500 on the signing of the agreement, $7,500 within fifteen days thereafter, and the balance on the day of settlement $185,000 in cash and $950,000 by mortgages to be assumed or given.   This agreement was specifically made subject to the terms of a certain other agreement between Dooley's vendors and one Thomas F. Clabby, whereby Dooley's vendors were to acquire title from Clabby between the inclusive dates of January 2d and January 5th, 1926;   and it was agreed that the settlement of Dooley's purchase from his vendors should be made at the same time and place as their settlement with Clabby and that time was of the essence. The agreement further stipulated that should the title to the premises prove defective the vendee should have the right to take such title as the vendors could give without abatement in the purchase price or be entitled to the return of the moneys paid, such option to be exercised by him within one week

after notification by the vendors of their inability to convey. The agreement also contained this provision: "It is expressly agreed that an executed copy of this agreement shall not be delivered to the party of the second part, but shall be deposited in escrow in the Atlantic Safe Deposit and Trust Company, Atlantic City, New Jersey, and there shall remain until final settlement is made under this agreement, and upon final settlement being made, the agreement shall be delivered by said Atlantic Safe Deposit and Trust Company to Cassman & Gottlieb, Esquires, who in turn shall deliver the same to the party of the second part upon the consummation of the sale on the day of settlement." The two $7,500 payments were made but Dooley was unable to gather his funds for the final settlement and on January 5th, 1926, he made urgent appeal for an extension, first to the vendors' attorney and then to the vendors themselves. A supplemental agreement was accordingly executed on that day. This supplemental agreement recited the inability of the vendee and his request for further time, and granted an extension of sixty days until March 5th, 1926, upon the express condition that the vendee would pay the vendors, on or before January 15th, 1926, an additional deposit of $25,000, and that upon the payment of this sum the vendee would be entitled to receive from the parties of the first part (vendors) an executed copy of "the original agreement together with an executed copy of this extension, which will be held in escrow by Cassman & Gottlieb until the said payment is made." It was also provided that time was the essence of the extension agreement, that upon the failure of the vendee to pay $25,000 on January 15th, 1926, the moneys already paid should immediately become forfeited and be detained as liquidated damages by the vendors at their option, and the extension should be null and void for all purposes and intents; and that the title should be such as would be insurable by the Chelsea Title and Guaranty Company as good and marketable.

Without notice, explanation or rescission, Dooley did not pay the money due January 15th, or any part thereof. He never demanded title nor tendered himself ready to take.

Dooley's vendors closed with Clabby and acquired the property, but a doubt developed as to the completeness of title to a one-half interest therein. The title company required certain proof or a clearing up of the questioned half interest before it would insure the title without exception. There was dispute as to when this situation became known to the parties to this action and as to the bearing thereof on their several acts or omissions. The plaintiff now claims that his failure to make the January 15th payment was because he had lately learned that the vendors were unable to make good title or procure the title company insurance.

The plaintiff places his appeal on numerous grounds, eighteen as set forth in the notice of appeal, two of which, however, are waived. Aside from questions as to evidence the essence of the remainder appear to be—

1. That the agreements were agreements in escrow; that the events which were to make them effective never transpired; that the agreements were, therefore, ineffective and that the moneys paid thereon should be returned to plaintiff.

2. That the vendors committed fraud upon the plaintiff at the time of the execution of the extension agreement in not divulging to him the condition of the title.

3. That the title was not good and marketable and that therefore the moneys paid should be returned. We shall consider these points in the order named.

The plaintiff contends that by the terms of the first agreement as well as of the supplementary agreement, these several agreements were held in escrow and were not to take effect until the condition on which the escrow rested was performed; specifically, with respect to the supplementary agreement, that this instrument was held in escrow dependent upon the payment by the plaintiff of $25,000 and that inasmuch as he did not make that payment the agreement did not become effective and any influence it might have had on the first agreement was null. There can be no doubt of the proposition that where an instrument is placed with a custodian not to be delivered to the grantee until a certain event happens or until a certain matter is done, it is an escrow, and the instrument will be

inoperative in the hands of the party against whom the escrow is directed until the performance of the condition shall give it vitality. *State Bank* v. *Evans*, 15 *N. J. L.* 155. The queston is whether that principle can be brought to operate here. It seems to us that it cannot. If the facts had been that the agreements had been made subject to a withholding until some condition had been met, the case would have been different. But the facts are quite otherwise. We consider that it was the vendee's executed copies of the agreements, and not the agreements themselves, that were held conditionally; and that the clear intent of the extension agreement was that the vendee, Dooley, was to pay $25,000 at or before the hour of two o'clock in the afternoon of January 15th, 1926, failing which the moneys theretofore paid should become forfeited and be detained as liquidated damages by the vendors at their option. Desirable as it may have been for the vendee to have duplicated executed copies in his possession, the agreements did not in terms require execution or delivery in duplicate as a prerequisite to validity; in fact, the vendors were lawfully in possession of the agreements, both primary and supplemental, fully executed and delivered by the vendee, and that, too, without any limitations by escrow or otherwise. The apparent purpose in temporarily keeping executed copies from the hands of the vendee was to prevent him from exhibiting credentials of title or rights therein until he had paid a substantial sum on the purchase price. The agreements were nevertheless effective. This disposes of the first, second, eighth and eleventh grounds of appeal.

The vendee, however, alleges that the vendors committed fraud upon him in either misstating or suppressing the facts regarding the title at the time of execution of the extension agreement; and that if the circumstances did not amount to fraud, the vendors were nevertheless under a duty, which they did not perform, to advise him of the condition of the title. The trial court found that the plaintiff had not sustained the burden of proof of the alleged fraud in the procurement of the extension agreement. We agree with that finding. The title company made certain requirements. It does not appear that

one or another of several alternatives might not have been availed of to clear the title or to satisfy the title company had Dooley at any time tendered himself ready to make settlement. As the settlement period fixed in the original instrument approached, Dooley indicated no desire or intention to co-operate in the three-way transaction to which his bargain bound him. His outstanding desire was to retain his right to purchase, notwithstanding a serious dearth of necessary funds. He wanted the extension and got it. He sought no information regarding the title. He obviously was content to let the question of title await its own day. He did not place the vendors in a position where it was their duty to speak. Neither has he clearly established with respect to January 5th, 1926, that the vendors misstated facts, or that they had the information which he charges them with suppressing or that his action was influenced by misstatement or suppression if such there was.

Under the same reasoning we consider that the trial judge committed harmless error in referring to the closing of the Clabby title as having occurred on January 2d whereas in truth it took place on January 13th. Dooley's vendors had quite as much title on January 5th, the date of the extension agreement, as they had in October preceding, when the original contract was signed.

This disposes of grounds of appeal numbered nine, ten, twelve and fifteen.

The vendee further contends that the title was not good and marketable and that the moneys paid should therefore be returned.

The parties by their solemn writing under seal postponed the settlement until March 5th, 1926, upon the condition, however, that the vendee pay an additional $25,000 on January 15th. It has long been the ruling law in this state that the time for the performance of a contract, either by deed or by parol, may be enlarged by parol (*Stryker* v. *Vanderbilt*, 25 *N. J. L.* 482) ; and it has also been held that when the time for performance has been so enlarged each party must be presumed to know that the other relies on the consent and before

calling a breach on the other must take some appropriate step to place him in default. *Nissel* v. *Swinley*, 76 *N. J. L.* 288. What may effectively be done by parol certainly may be done by deed. The date of settlement was extended to March 5th, subject to the condition mentioned. Could the vendee, keeping absolut silence, automatically revoke the extension agreement of January 5th by an unannounced default in his required payment of January 15th, and thus place the vendors in default because they had not perfected their title for settlement on January 5th? We think not, particularly in view of the circumstances, already adverted to, on and preceding the last mentioned date. The vendee did not rescind; he contends there was no necessity so to do and relies upon *Reutler* v. *Ramsin*, 91 *Id.* 262. But in that case the day fixed for the carrying out of the contract had arrived and the vendor tendered a deed that did not, and could not be made to, comply with the terms of the contract.

In *Kadow* v. *Cronin*, 97 *N. J. L.* 301, it was held by this court that the vendee had erred in refusing to tender the purchase-money or accept the tender of a duly executed deed because a mortgage was not paid off prior to the settlement; the opinion holding that if the mortgage was properly paid off and satisfied at the settlement, that was all the vendee was entitled to.

The vendee on January 15th did not and could not know whether the defective title would be cured by March 5th. It was later perfected by a defaulted suit to quiet title. There were other methods available. We do not interpret the original agreement to mean that the vendee had the option, instanter, upon a defect appearing in the title, to demand the return to him of purchase-moneys paid, or to mean that immediately upon a defect coming to their attention the vendors were obliged to inform the vendee thereof. The vendors had the right, within their lawful period, to make good their title. Whether the vendee, under the peculiar provisions of the extension agreement, could, by rescission or notice, have altered the application of this general rule, is a question not before us.

The agreement of October 24th, 1925, was supplanted, *pro tanto,* by the agreement of January 5th, 1926. Before the settlement day fixed in the latter instrument arrived, the vendee by his default deprived himself of any further rights thereunder. He cannot, either in conscience or in law, convert his own default into a default by his vendors, either under the extension or the original contract. This disposes of grounds of appeal numbered thirteen, fourteen, sixteen, seventeen and eighteen.

We have examined grounds numbered four and five relating to unimportant rulings on evidence and we find no error therein. Neither do we find error in the third ground which has to do with the court's refusal to allow testimony tending to show defective title as of March 5th. The vendee, after his default, had no interest in the title as of that date.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, CAMPBELL, LLOYD, CASE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 13.

*For reversal*—None.