15 N.J. Super. 27 (1951)
83 A.2d 17
ANN HODES, PLAINTIFF-RESPONDENT,
v.
JOSEPH DUNSKY AND IRMA DUNSKY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued July 30, 1951.
Decided August 10, 1951.
*29 Before Judges JAYNE, WM. J. BRENNAN, JR., and VANDERWART.
Mr. Jerome Lieb argued the cause for appellants (Messrs. Harkavy and Lieb, attorneys).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Following this court's reversal of a summary judgment in defendants' favor, Hodes *30 v. Dunsky, 5 N.J. Super. 333 (App. Div. 1949), plaintiff obtained a judgment in Essex County Court upon a jury verdict for the deposit paid by her under her contract with defendants for the purchase of real estate. Defendants' motion for a new trial was denied by the trial court. Their appeal here challenges the denial of their motion for judgment made at the close of the case and raises again the question, as may be done under the Rules (Rules 1:2-20, 4:2-6 and 3:59-1, as amended), whether in any event the jury's verdict should not be set aside as contrary to the weight of the evidence.
The test whether there was error in denying the motion for judgment requires that plaintiff's evidence be accepted as true and that she have the benefit of all legitimate inferences in her favor that may be drawn from the record. We have viewed the record in that light. Plaintiff proved that she was anxious to move her family from an apartment above her husband's tavern. Defendants' house was vacant and for that reason its purchase was particularly desired by plaintiff because houses available for occupancy were hard to find in that period of housing shortage. Defendants had already contracted to sell to one Janoff under an agreement fixing September 1, 1948, for the closing of title. Plaintiff acquired the contract from Janoff after specifically telling defendant Joseph Dunsky that she "needed it (the house) right away." The formal assignment was executed September 2, 1948, and as part of the transaction defendants exacted a deposit of $1,750, or $1,000 more than the deposit called for by the contract, and extended the closing date to October 15, 1948. An attorney, Mr. Levy, represented plaintiff in this transaction.
The Midtown Savings & Loan Association held a small mortgage on the house. Plaintiff personally negotiated an increase in the amount of the mortgage. The association attorney, Mr. Rosenberg, mailed her its commitment on October 7. Plaintiff badgered Mr. Rosenberg and defendants' attorney with telephone calls seeking assurance that the *31 closing would take place on schedule. "Mr. Rosenberg became angry with me for bothering him." However, the scheduled closing did not take place because Mr. Rosenberg's search disclosed an outstanding judgment against defendant, Joseph Dunsky, of which Mr. Rosenberg advised defendants' attorney by letter of October 14 and of which, according to plaintiff, defendants' attorney advised her the next day. Plaintiff also testified that defendants' attorney told her at the time, "Wait, we are trying to clear it up," "it would take a couple of days."
A week later plaintiff telephoned defendant Joseph Dunsky who, she said, told her "my attorneys are working on it," "I don't know what I can do for you." She was not satisfied and told him, "I want my money back." She enlisted the aid of her husband and sister, both of whom testified to telephone conversations with Dunsky; the sister's testimony was that when she pleaded with Dunsky to give plaintiff "the house or give her the money back," Dunsky's response was, "Business is business. I can't give her money back. It is my benefit and her loss."
Plaintiff then "got disgusted" and in early or mid-November consulted another attorney, Mr. Davimos, "to get my money back for me." Mr. Davimos required a written assurance from Mr. Levy that the latter had no objection to plaintiff's retention of another attorney, which writing plaintiff obtained from Mr. Levy on December 1. In the afternoon of December 2 Mr. Davimos upon plaintiff's instructions mailed a registered letter to Joseph Dunsky formally rescinding the contract and demanding the return of the deposit.
Meanwhile, in the morning of December 2, defendants' attorney, after a prolonged but unsuccessful effort to clear the record of the judgment by other means, had obtained a court order permitting the payment into court of the amount due on the judgment. Plaintiff was unaware of this when she instructed Mr. Davimos to mail the letter. Mr. Rosenberg and Mr. Levy knew of it because defendants' attorney had shown each of them a copy of the order during the *32 morning. However, neither of them communicated with plaintiff on that day.
The contract does not stipulate that time is of the essence and defendants insist there are no circumstances which are persuasive that that is the case. They therefore argue that plaintiff could not declare defendants in default without first making a supplemental demand that the title be closed by a given day sufficiently after the making of the demand to constitute the interval a reasonable time, and, it being conceded that no such demand was made, that their motion should have been granted. They rely on Paradiso v. Mazejy, 3 N.J. 110 (1949); Williams v. Sanacore, 11 N.J. Super. 51 (App. Div. 1951); Nissel v. Swinley, 76 N.J.L. 288 (Sup. Ct. 1908); Schlecter v. Hollander, 11 N.J. Super. 236 (App. Div. 1951); Barba v. Gunsberg, 3 N.J. Misc. 714 (Sup. Ct. 1925); Dooley v. Kushin, 105 N.J.L. 595 (E. & A. 1929). Those are cases in which extensions of the closing date were expressly agreed upon by the parties. Where such an extension agreement appears, even though parol, it is thought unjust to permit a party to consider the other in default until such supplemental notice is given, inasmuch as the party purporting to rescind must be presumed to know that the other party relies upon the consent to the extension.
Defendants argue that an extension agreement was made in this case also, not by plaintiff personally, but by Mr. Levy on her behalf. Their difficulty is that the proofs do not support their contention. Mr. Levy, called by defendants as their witness, corroborated plaintiff's testimony that his employment was limited to advising her at the time the contract was signed and to be present at the closing when notified of its time and place. He received a fee of $25. Plaintiff personally attended to the details of the negotiations and to the mortgage arrangements and, as mentioned, testified that she personally importuned Mr. Rosenberg and defendants' attorney prior to October 15 to expedite the closing. Mr. Levy expressly disclaimed that plaintiff had ever authorized him to enter into an agreement of extension. Indeed *33 when he informed plaintiff of the difficulty on October 15 her reaction, according to him, was to "repeat her constant story to me that she wants to get in, that she needs the property and has to get into the property, and conversations of that kind." The circumstances clearly do not support a holding that if Mr. Levy was plaintiff's agent he had as such any authority arising purely by implication of law to extend the time of performance. See Norton v. Miller, 138 N.J. Eq. 235 (Ch. 1946), affirmed 139 N.J. Eq. 310 (E. & A. 1947). In any event he said that the extent of his action when notified by defendants' attorney on October 15 of the existence of the judgment was to urge that it be cleared "as quickly as you can." This manifestly does not constitute an agreement, as defendants contend, to "postpone the closing" until the record was cleared.
As there was no extension agreement defendants were not entitled to a supplemental notice. Even though we acknowledge that there is a strong tendency to depart from a strict enforcement of the rule that, at law, time for performance, stipulated in a contract, is to be considered of the essence unless a contrary intent appears, Hodes v. Dunsky, supra, at 337, and assume that plaintiff having let the closing date go by would not be permitted to make an arbitrary and sudden termination of the contract, nevertheless, plaintiff, not having consented to an extension, could effect a rescission without first making a supplemental demand after allowing defendants a reasonable time within which to remove the disability. See Bernstein v. Kohn, 96 N.J.L. 223 (E. & A. 1921); cf. Restatement, Contracts, sec. 275, comment (a).
The question whether in the circumstances plaintiff waited a reasonable time before rescinding was for the jury and not the court. Generally issues of reasonableness are jury questions and are for the court only when the facts are undisputed and different inferences cannot reasonably be drawn from them. Ingling v. Public Service El. & Gas Co., 10 N.J. Super. 1 (App. Div. 1950).
*34 Nor were defendants entitled to have their motion granted on the ground, as they contend, that plaintiff was not able and ready to perform on October 15. Plaintiff proved that she had the mortgage commitment and sufficient cash to complete the purchase. True, Mr. Rosenberg testified that he would not have disbursed the mortgage moneys on October 15 because he did not have in hand until October 27 a certificate ordered by him on October 8 as to the status of liens against former owners under the Unemployment Compensation Act. This was not evidence bearing on plaintiff's ability to perform her covenant to pay the purchase price in manner stipulated by the contract. Rather, the certificate was required to evidence defendants' ability to perform their covenant to deliver a title free from encumbrance.
We are not persuaded from our independent examination of the record, made with due regard to the denial by the trial court of defendants' motion, that the jury's verdict was contrary to the weight of the evidence.
Affirmed.