16 N.J. Super. 1 (1951)
83 A.2d 790
HAROLD GINDIN, PLAINTIFF-RESPONDENT,
v.
HERMAN BARON, T/A B & B PROVISION COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 8, 1951.
Decided October 17, 1951.
*4 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Lewis Winetsky argued the cause for respondent.
Mr. Raymond F. Brady argued the cause for appellant.
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Plaintiff sued for damages for injuries suffered from a willful assault upon him by defendant, Stein, an employee of defendant Baron. Liability of Baron was alleged under the doctrine of respondeat superior.
Upon the first trial plaintiff recovered a judgment against Stein but his case as to Baron was dismissed by the court We reversed the judgment of dismissal and returned the case to the Law Division, Union County, for a trial de novo as to Baron. (Gindin v. Baron, 11 N.J. Super. 215 (App. Div. 1951)).
The second trial resulted in the entry of the judgment on appeal. It is a judgment against Baron in the sum of $2,500 entered upon a jury verdict of $1,500 compensatory and $1,000 punitive damages. Thereafter the trial judge denied Baron's motion for a new trial sought upon the ground that the verdict was against the weight of the evidence and excessive.
The alleged excessiveness of the verdict is not pressed in this court, but it is again urged that as to liability it was contrary to the weight of the evidence. We do not abrogate a judgment on that ground unless, having given due regard to the action of the trial court and its opportunity and that of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that the underlying verdict was the result of mistake, partiality, prejudice or bias. Rule 1:2-20, as amended; Hodes v. Dunsky, 15 N.J. Super. 27 (App. Div. 1951); Gelsmine v. Vignale, 11 N.J. Super. 481 (App. Div. 1951); (see Hager v. Weber, 7 N.J. 201 (1951)). *5 Tested by that standard, we perceive no basis upon which the judgment should be nullified.
The evidence against Baron did not materially differ at the two trials. It is substantially summarized in our previous opinion, 11 N.J. Super., pp. 218-219. Whether the elements were proved establishing liability depends entirely upon whether the jury could reasonably find that certain statements testified to by plaintiff as having been made by Baron were made by him. Plaintiff testified that at the scene after the attack Baron said to Stein, as Baron, Stein, the plaintiff and a police officer were entering an automobile to go to the police station, "It's a good thing that you gave him a good beating. Now he won't bother our customers any more"; and that Baron at the police station but out of the presence of any officer said to plaintiff, "Now you will stay away from our customers, now that you got a good beating."
Plaintiff also testified that a few weeks prior to the assault. Stein and he had met on two occasions while driving their respective employers' trucks on the highway and that Stein had threatened to injure plaintiff if he did not stay away from Baron's customers. Stein admitted one such meeting, but denied that he had threatened plaintiff; he said plaintiff had cut him off when passing him and that this had occasioned the exchange of words between them.
Plaintiff said that on the day of the assault he had parked his truck in front of the Fishman store and was waiting in the store for delivery of goods he had purchased when Stein entered and, addressing plaintiff with an epithet, immediately perpetrated the assault as plaintiff sat at a table.
The defense was that Stein's admitted assault was occasioned solely by personal animosity of Stein toward plaintiff. Baron testified that he never had heard of plaintiff before the attack, did not know he was employed by Baron's competitor, Hebrew Kosher Provision Company, and was completely unaware of plaintiff's presence in the Fishman store when Baron, Stein and another employee of Baron drove to the store and Stein entered, leaving the other employee and *6 Baron in the car. Baron said that Stein was not a route salesman but a handyman, and that on that day he and Stein had previously met at a neighboring auto repair shop where Baron had left a truck for repair, and while driving back to Baron's place of business had stopped at the Fishman store to pick up some goods Baron had ordered. Witnesses from the auto repair shop and Fishman's testified from records to substantiate Baron's explanation of his presence at the scene. Stein denied that plaintiff's truck was parked in front of the store or that he saw it before he entered. He admitted, however, that he was familiar with the truck because it was readily identifiable from its markings and also that he saw it after the attack but, according to him, parked a block from the store.
Baron categorically denied making the alleged remarks and indeed testified that he had made no remark of any nature, either to Stein or to the plaintiff, outside the store after the attack, on the way to the police station in the car, or at the police station. The two police officers who dealt with the parties, one at the store and one at the station, were called as witnesses for Baron but each could only testify that he had no recollection of Baron's having said anything while in his presence.
In this posture of the proofs the resolution of the conflict in the evidence and the credibility to be given plaintiff's testimony in the light of inconsistencies and contradictions contained in it were matters exclusively for the jury as the triers of fact and judges of the credibility of the witnesses. Our power to upset a judgment as entered upon a verdict contrary to the weight of the evidence is fundamentally remedial. We may not under the guise of that power invade the constitutional office of the jury to weigh evidence not itself inherently improbable and substitute our judgment of what testimony is credible and what is to be rejected as unworthy of belief. It is evident that the jury believed plaintiff's testimony, which, upon the record, it was privileged to do. Plainly, nothing appears upon which this *7 court could find that the record irresistibly compels the inference that the verdict was the product of mistake, partiality, prejudice or bias.
It is next argued that there was insufficient evidence to support the award of punitive damages. We cannot agree. The remarks, which it is clear the jury found Baron had made, reasonably justified in their setting a finding, not only that Baron ratified Stein's wrongful act, but also, when considered with the facts of Baron's presence outside the store during the assault, and the proximity of plaintiff's parked truck, that Baron had prior knowledge of Stein's purpose and that Stein perpetrated the assault in the protection or promotion of Baron's interests. Where an assault is committed by a servant in the furtherance and discharge of his master's business and within the scope and limits of his employment, the master may be liable not only for compensatory but also for punitive damages where, as here, the proofs justify the jury in finding that the master expressly or impliedly authorized the wrong or ratified it. See authorities collected in Gindin v. Baron, supra, at page 220, and particularly, Wendelken v. New York, S. & W.R.R. Co., 88 N.J.L. 270 (E. & A. 1913).
It is next argued that after it had been developed upon Stein's cross-examination that he had been convicted of a crime before his employment by Baron, Baron should have been allowed to testify that he had no knowledge of Stein's criminal record when he employed him. The contention is that Baron's innocence of such knowledge was relevant and material to Baron's defense "to overcome unfavorable inferences which might be drawn by the jury." We discover nowhere in the record that Baron was ever asked whether he knew of Stein's conviction when he employed him and we might for that reason properly refuse to consider the point. See Gibson v. Pennsylvania R.R. Co., 14 N.J. Super. 425 (App. Div. 1951). However, it is without merit. The fact of Stein's conviction was elicited as bearing upon his credibility, for which purpose it was of course evidentiary. R.S. *8 2:97-13. Evidence legal for one purpose is not excluded because the jury may erroneously apply it otherwise. If counsel for the defendant apprehended that the jury might improperly consider the conviction for some other purpose, he should have submitted a request to the trial judge to instruct the jury as to the limited office of the evidence and to point out specifically the purpose to which the fact of Stein's conviction had no legal application and to direct its exclusion from the jury's consideration for such purpose. No such request was submitted and defendant must be deemed to have waived such instruction as unnecessary for his protection. Trenton Passenger Ry. Co. v. Cooper, 60 N.J.L. 219 (E. & A. 1897); 1 Wigmore, Evidence (3d ed.), 299-303.
Defendant's last point is that X-ray plates were improperly admitted in evidence. The treating physician testified that he had directed the taking of the X-rays for his use by the technician who took them and identified them as having been used by him for his diagnosis and treatment of plaintiff's injuries. This testimony supplied a sufficient foundation for the admission of the plates in evidence. Greco v. Schmidt, 101 N.J.L. 554 (E. & A. 1925); Robinson v. Payne, 99 N.J.L. 135 (E. & A. 1923).
Affirmed.