[No. 38584.    Department Two.    September 29, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. SAM NOYES, *Appellant*.*

*Reported in 418 P.2d 471.

*Edward H. McKinlay* (of *Horrigan, Sullivan & McKinlay*), for appellant (Appointed counsel for appeal).

*C. J. Rabideau,* for respondent.

TURNER, J.†—Appellant was charged with second degree murder. The jury found him guilty of manslaughter. His alternative motions in arrest and for a new trial were denied. He appeals from the judgment of conviction entered on the verdict.

Appellant and the deceased, Mrs. Renetta Smith, had maintained an illicit relationship for several years. While they lived together for short periods, her permanent residence was in Pasco, in eastern Washington, while appellant lived in Seattle, Tacoma or Olympia, according to his employment. Appellant would frequently drive across the mountains on weekends to see her. The state's evidence tended to show that appellant was jealous, and on occasion accused decedent and quarreled with her about associating with other men. On the evening of July 2, 1965, appellant left Olympia for Pasco, arriving at decedent's home in the early morning hours of July 3rd. The state's evidence was that a quarrel followed, during which appellant said, "Woman, I've got a gun," and "I'm going to kill you." This was followed by a shot, after which appellant fled. Deceased was found lying on the floor of her bedroom. She had been shot through the heart, and died in a very short time.

Appellant's version at the trial was that he was bringing the gun (a .22 caliber revolver) over from Olympia to give to the deceased for her protection; that on his arrival at her home, she got out of bed to admit him, then returned to bed, and he sat quietly in a rocking chair while they talked for a while. He denied any argument or quarrel, or threatening the deceased in any way. He then started to put the gun in a dresser drawer, deceased jumped out of bed, reached for the gun, and during a struggle for its possession, it was accidentally discharged and she fell to the

---

†Judge Turner is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

floor. Appellant then panicked and fled, without stopping to ascertain her condition.

After leaving Pasco, appellant threw the gun, holster and a box of ammunition into a vacant field, then drove on. At Mesa, some 35 miles from Pasco, he turned himself in to the city marshal, told him of the shooting and claimed it was an accident. This was about 5:15 a.m. The marshal telephoned the sheriff's office, was told that the victim was dead, and was requested to hold appellant in custody.

Undersheriff Hood arrived there about 6 a.m., informed appellant of his right to counsel and that he did not have to make any statement until he talked to his attorney. Appellant said that he wanted an attorney as soon as he got back to Pasco, and then went right on talking. Mr. Hood placed appellant in the sheriff's car and started to close the door, but appellant said "No, get in, I want to talk to you," so Mr. Hood got in the back seat with him. Appellant told him of his reason for bringing the gun over from Olympia, his version of the shooting during the struggle for its possession, and described the place where he had thrown the gun out of the car near the cemetery,—all generally consistent with appellant's testimony at the trial.

The sheriffs then took appellant to the field near the cemetery where appellant said he had thrown the gun. At this point, they were met by Pasco police, and the sheriffs and police then searched for the gun, aided by the directions of appellant. Appellant soon said that he felt that he was going to be sick, and requested to be taken to the jail and locked up. This was done.

Thereafter and while in custody, the appellant was interrogated by Captain Hutton of the Pasco Police Department; a statement was obtained and was admitted in evidence. This forms the basis of appellant's 11th assignment of error.

About 10 o'clock on the same morning (the 3rd), Captain Hutton, in ignorance of the request that appellant had made for counsel, interviewed him in the jail. He first advised appellant of his constitutional rights, including the right to remain silent, to have the assistance of counsel, and

warned him that any statement he did make could be used against him in court. To this advice the appellant made no comment. The interview lasted some 2 hours and a statement was written down in question and answer form. Since the appellant was unable to read, Captain Hutton read the statement to him and he signed it.

That afternoon appellant requested counsel, and Captain Hutton telephoned the attorney whom appellant had requested. The attorney, however, did not see appellant until the following day.

There is no claim that at any time during the interrogation or otherwise there was any compulsion or coercion exerted upon appellant, that his statements to the officers were involuntary, that he did not understand his right to remain silent, his right to counsel, and that any statement could be used against him. At the trial, on cross-examination, appellant admitted making the statements to the officers substantially as they testified to them, with few exceptions. Chief among these was Captain Hutton's testimony that appellant told him that just before the shooting he had said to decedent that she ought to be ashamed of herself and that people were talking about her; appellant denied making this statement. There was also some discrepancy in the details of the shooting between the statement to the officers and appellant's testimony at the trial. In all substantial details, however, the appellant's testimony at the trial corresponded with the statements he had made to the officers, and he did not deny that these statements were voluntarily made.

During the trial, the court conducted a hearing in the absence of the jury pursuant to the requirement of Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0. At this time, the trial court was of the view that the appellant's statement to Captain Hutton was not a confession, but was rather an exculpatory statement, and did not enter written findings and conclusions until January 2, 1966. These findings recite the trial on September 13, 1965, appellant's objection during the trial to the admissibility of the statement obtained by Captain Hutton, the taking of testi-

mony pursuant to the requirements of Rule 101.20W, and the advice by the court to the appellant of his right to testify at this hearing and his election in open court not to do so. The findings then set forth the relevant facts relating to the statement. Findings of fact Nos. 3 and 6 are as follows:

That prior to asking defendant, Sam Noyes, any questions, Kenneth W. Hutton orally advised defendant of his rights under the Fifth Amendment to the United States Constitution, as follows:

(a) Right to counsel at the time of questioning and at trial;

(b) Right to trial;

(c) Right to remain silent;

(d) That anything said by defendant could be later used against defendant in a Court of law; and, that defendant Sam Noyes advised Kenneth W. Hutton at that time that defendant understood his rights aforementioned. Finding of Fact No. 3.

That defendant did not demand the assistance of an attorney for advice during the questioning on July 3, 1965 by Kenneth W. Hutton. Finding of Fact No. 6.

The court concluded that the written statement, exhibit 19, was admissible and it was thereafter admitted in evidence.

The appeal in this cause was argued to this court June 14, 1966, the day following the announcement of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602, and accordingly we have not had the benefit of the comments of counsel on that decision. However, that case is not to be applied retroactively (*Johnson v. New Jersey,* decided June 20, 1966, 384 U.S. 719, 16 L. Ed. 2d 882, 86 Sup. Ct. 1772), and it does not govern here.

■ The record shows that appellant's statement was voluntarily made, that, at the time of giving it, he was adequately advised of his constitutional rights, and that he knowingly and intentionally waived those rights.

Appellant's remaining assignments may be summarily disposed of. The judgment now appealed from followed the second trial of this case. The first trial resulted in a

hung jury which stood 11 to 1 for acquittal. Appellant then moved to dismiss, and assigns error on the denial of this motion. His claim that at this point he could waive a unanimous verdict and accept the vote of 11 jurors as a valid verdict of acquittal is without merit.

■ Appellant next assigns error on permitting the state to amend its witness list between trials so as to include persons who could, with reasonable diligence, have been discovered prior to the first trial. The ruling on this motion was within the court's discretion, and no abuse is shown.

The third assignment is based on the court's denial of appellant's challenge for cause to prospective juror Tate. This juror lived in the same neighborhood with the deceased and had known her, and had discussed the facts of the case with at least two persons subsequent to the first trial. The juror stated, however, that she could lay these experiences aside and give the defendant a fair trial. After the denial of the challenge for cause, appellant exercised one of his peremptory challenges against the juror and she was excused. There is no basis for any claim of error here.

Two of the state's witnesses testified to quarrels between the appellant and decedent occurring some 3 years before trial, and to an implied threat by appellant to another man about taking the decedent in his car. These occurrences were relevant to show appellant's motive, and his tendency to quarrel with the decedent with respect to her relationships with other men. The question of remoteness was one for the discretion of the trial court. No abuse has been shown.

■ Appellant next assigns error on the court's failure to give a precautionary instruction limiting the jury's consideration of the above testimony to the particular purposes for which it was admissible. This point was not raised in the trial court. It is raised for the first time on appeal. Appellant relies on *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300, where this court stated that in such circumstances it was the duty of the trial court to inform the jury of the limited purpose of the evidence, and to admonish them that it

was to be considered for no other purpose. This court did not say that in the absence of a request by the objecting party it was error for the trial court not to give the limiting instruction *sua sponte*. Appellant has cited no authority so holding, and we are aware of none. That a request for a limiting instruction is a prerequisite to a successful claim of error on appeal, see *Dirring v. United States,* 328 F.2d 512 (1st Cir.); *Gindin v. Baron,* 16 N.J. Super. 1, 83 A.2d 790; *Kading v. Willis,* 135 Cal. App. 2d 82, 286 P.2d 861.

The trial court did state affirmatively to the jury in instruction No. 2 that they should consider evidence concerning the relationship between the appellant and the decedent "as an element to determine motive, if any, on the part of the defendant, Sam Noyes, to commit the crime with which he is charged."

If appellant desired a limiting instruction, it was his duty to request it. In the circumstances of this case, it was not error for the court to fail to give the precautionary instruction on its own motion.

By the ninth assignment, appellant claims that he was not advised of his right to take the stand in the hearing pursuant to Rule 101.20W. The findings of fact made by the court recite that he was so advised, and that he declined to testify. This finding is not shown to be wrong.

Appellant assigns error on the delay of more than 3 months in entering the findings and conclusions pursuant to the Rule 101.20W hearing. The rule contemplates the prompt entry of findings and conclusions. In this case, the delay caused no prejudice.

Appellant claims that the trial court should have declared a mistrial because of the following comments of the prosecutor in his closing argument:

> He [appellant] seems to be a man who tends to live outside the law and I base this basically on the fact that he had been going with Mrs. Noyes for about six years and wasn't married to her. As you all know in this State a man and wife must be married in a certain prescribed manner—they had never sought to get a license—by Mr. Noyes' own testimony they were planning to get married, but they had lived together as man and wife, by his testi-

mony and that of Mrs. Smith's twelve year old daughter.

Appellant objected, and the court ordered the remarks stricken. Appellant did not move for a mistrial. There is here no foundation for a claim of error.

Appellant had a fair trial. The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.