591 P.2d 557

**The STATE of Arizona, Appellee,**

**v.**

**Issac Monge SIQUEIROS, Appellant.**

**No. 2 CA–CR 1347.**

Court of Appeals of Arizona,
Division 2.

Dec. 22, 1978.

Rehearings Denied Feb. 7, 1979.

Reviews Denied Feb. 27, 1979.

John A. LaSota, Jr., Atty. Gen., by William J. Schafer, III, and Gregory A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by James E. Sherman, Asst. Public Defender, Tucson, for appellant.

## OPINION

RICHMOND, Chief Judge.

Appellant's conviction of voluntary manslaughter must be reversed under *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). His motion to suppress evidence seized by the police in a warrantless search of his apartment was denied by the trial court in reliance on *State v. Mincey,* 115 Ariz. 472, 566 P.2d 273 (1977), which subsequently was reversed on certiorari by the Supreme Court of the United States. Questions remain as to what other evidence is admissible at retrial.

On February 21, 1977, Richard Munoz, a patrolman with the uniformed division of the Tucson city police, received a radio dispatch to investigate a possible "D.O.A." (dead on arrival) at an apartment on South Sixth Avenue. Munoz, who was only a block away, proceeded immediately to 536 South Sixth Avenue, arriving there at 8:42 a. m. As he left his patrol car, he saw appellant walking toward him and asked if appellant had called the police. Appellant answered something to the effect, "It's my friend."

On further questioning, Munoz was informed that appellant was unable to wake up his friend. The officer followed appellant into the apartment and was led to a doorway into the only bedroom. Appellant stepped aside and Munoz entered the bedroom. He saw the victim lying on the bed, covered except for his face, which appeared to have been cut or scratched. The officer approached the bed and determined without moving the victim that he was dead. While he was examining the body, Munoz heard the sirens of arriving fire department rescue personnel. He went outside and led the rescue personnel into the apartment. While they were in the bedroom, Munoz remained in the living room talking with appellant.

Appellant told Munoz that the previous evening the deceased and appellant had gone to a bar on South Sixth Avenue and returned home about 11:00 p. m. The deceased had then changed clothes and left again, returning home after midnight. When he returned he was covered with blood, but refused appellant's offer to call an ambulance or a fire rescue unit, and went to bed. Appellant had called the police when he was unable to wake the decedent the next morning.

Other police officers arrived shortly thereafter and appellant agreed to accompany one of them to the police station for an interview.

Detective John D. Martin of the homicide detail arrived after appellant had left the apartment. Martin was placed in charge of

the investigation of the scene by Sgt. Larry Bunting, the ranking homicide detective. Munoz and another officer, on instructions from Martin, began a wide-ranging search, both inside and outside the apartment. No attempt was made to obtain a search warrant or appellant's permission for the search, which produced numerous blood-stained articles within the apartment, as well as soiled and bloodstained clothing and paper towels found in a garbage can outside. On top of the items in the garbage can were weeds that appeared to have been freshly cut.

Sgt. Bunting meanwhile examined the victim's body and 15 or 20 minutes later went to the police station and asked appellant for the two rings he was wearing, in order to determine whether they might have caused some of the injuries. Appellant was able to remove only one of the rings, which Bunting then took back to the apartment. The body by then had been placed in an ambulance. After further examination, Bunting concluded that the ring might have been involved in the injuries. He returned to the police station and asked for the other ring, which was then removed with soap and water. At that time Bunting told appellant he thought that the injuries he had seen were the result of the victim being hit by someone wearing the rings, and appellant said he had backhanded the decedent a couple of times to get him into bed. Bunting took the second ring to the medical examiner's office, where he further examined the body and some photographs were taken. Subsequently, appellant was placed under arrest and after being advised of his *Miranda*[1] rights, admitted he could have kicked the victim in the back or stomach.

Appellant contends that not only the tangible evidence but also his statements were the product of an illegal search and should have been suppressed. He also attacks as error the denial of his motion to exclude testimony about his homosexual relationship with the victim and a prior altercation between them. Although we hold admis-

sion of the articles seized inside the apartment without a warrant requires reversal, we reject appellant's other arguments.

██ In *Mincey v. Arizona*, supra, the United States Supreme Court laid to rest the "murder scene exception" to the Fourth and Fourteenth Amendments that had been developed in Arizona decisions beginning with *State v. Sample*, 107 Ariz. 407, 489 P.2d 44 (1971). Without questioning the right of the police to respond to emergency situations and to seize any evidence in plain view during the course of their legitimate emergency activities, the court in *Mincey*, 98 S.Ct. at 2414, nevertheless held that "a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation,'" citing *Terry v. Ohio*, 392 U.S. 1, at 25–26, 88 S.Ct. 1868, at 1882, 20 L.Ed.2d 889. Like the search in *Mincey*, the search after appellant had left the apartment was not justified by any emergency threatening life or limb.

██ Nor are some of the articles seized inside the apartment admissible because they were in plain view when officer Munoz first entered at appellant's implied invitation to render aid. The "plain view doctrine" permitting seizure of articles which inadvertently came into an officer's view while he was lawfully on the premises is limited to items tied to criminal activity, either intrinsically or through an officer's knowledge and reasonable belief. *State v. Cook*, 115 Ariz. 188, 564 P.2d 877 (1977). The evidence here is equivocal at best as to when the various articles were first observed. What is determinative, however, is the fact that they were not immediately connected with criminal activity, as evidenced by the delay in placing appellant under arrest. The mere fact that police have legitimately obtained a plain view of incriminating evidence is not enough to justify a warrantless seizure. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, n. 27 at 2041, 29 L.Ed.2d 564 (1971). Once the evidentiary significance of the items became apparent, a warrant should have been obtained.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The articles taken from the garbage can present a different question. The facts, when viewed in the light most favorable to support the trial court's ruling on the motion to suppress, *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976), more closely approximate those in *State v. Fassler*, 108 Ariz. 586, 503 P.2d 807 (1972), than the situation in *State v. Broom*, 113 Ariz. 495, 557 P.2d 1052 (1976), where the disputed evidence had never been placed inside the garbage can. Despite the fact that the clothing and paper towels were covered with weeds, the question is whether appellant had abandoned them, thereby surrendering his privacy with regard to those articles. Appellant's testimony that he had thrown them in the garbage supports a finding of abandonment, and it was not error to admit them into evidence.

We find no merit in appellant's argument that his statements should have been suppressed as products of the illegal search, under *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The argument is based on the fact that the statements resulted from Sgt. Bunting's initial examination of the victim's body in the apartment. The examination of the body, however, was unrelated to the search of the apartment, and was consistent with the purpose for which the police and fire rescue personnel were admitted to the premises.

Also, it was not error to admit testimony regarding previous altercations between appellant and the victim, or that they were lovers, in order to establish the nature of their relationship and a possible motive for the crime. *See, e. g., Romero v. People*, 170 Colo. 234, 460 P.2d 784 (1969). The question of remoteness was one for the discretion of the trial court. *State v. Noyes*, 69 Wash.2d 441, 418 P.2d 471 (1966), *cert. den.*, 386 U.S. 968, 87 S.Ct. 1053, 18 L.Ed.2d 122. Appellant argues that the rule of the cited cases as to heterosexual couples should not be applied to homosexuals *without evidence "that the same type of relationships exist among homosexuals as exist among heterosexuals."* He cites no authority for this novel argument, and we are not persuaded to provide any for the future.

The judgment and sentence are vacated. Appellant was charged originally with first degree murder. His conviction of the lesser included offense of voluntary manslaughter operated as an acquittal of more serious charges, and the case is remanded for retrial on the charge of voluntary manslaughter.

HOWARD and HATHAWAY, JJ., concur.