IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32226-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TROY J. WILCOXON, | ) | OPINION PUBLISHED IN PART |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Troy Wilcoxon appeals from his three convictions related to the

burglary of a casino/bowling alley in Clarkston. He challenges the use of a co-defendant's

statement at their joint trial, the failure to giving a limiting instruction concerning that

statement, an officer's testimony concerning the cell towers that processed telephone calls

between the two defendants during the burglary, and the court's denial of his request for a

continuance. We affirm.

## FACTS

Mr. Wilcoxon and his co-defendant, James Nollette, were charged after a burglary

in the early hours of May 23, 2013, at the Lancer Lanes Casino.[1] Mr. Wilcoxon worked

---

[1] The casino is also referred to as Bridge Street Connection throughout the trial
record and briefing. We will use the name Lancer Lanes.

as a dealer at the casino, but Mr. Nollette did not have a connection to the business. Prior to the burglary, both men had told others that Lancer Lanes would be a good burglary target because the security was poor.

Not coincidentally, at least according to the prosecutor's theory of the case, Lancer Lanes had been the subject of a failed burglary eight days earlier. On that earlier occasion, a man wearing a black plastic bag over his body had entered the building after hours and cut the power to the building's surveillance system by throwing a breaker switch.[2] The "popping" of the electricity awakened Eric Glasson, a man who frequented Lancer Lanes and did odd jobs at the establishment in exchange for food. He had fallen asleep while watching television with the lights on. Glasson fled the building when the lights went out. His flight alerted the "bagman" burglar that the building was occupied. The bagman also fled without taking any property.

On the night of May 22, Mr. Wilcoxon invited Mr. Glasson to join him, several other employees of Lancer Lanes, and Mr. Nollette, at the Candy Store, a Lewiston, Idaho strip club. Mr. Glasson accompanied Mr. Wilcoxon to the establishment, where Mr. Wilcoxon paid his cover charge and purchased Mr. Glasson's first drink. Surveillance cameras as the Candy Store recorded the time of the group's arrival as 11:57 p.m. on May 22. At 12:51 a.m., less than hour later, Mr. Wilcoxon departed the group and did not return

---

[2] The disguise was sufficient to obscure the identity of the burglar. No one was charged with attempted burglary for the incident.

2

to the Candy Store. The Lancer Lanes group ultimately departed the Candy Store at 2:29 a.m.

Lancer Lanes was burglarized between 1:56 a.m. and 2:08 a.m. on May 23. Surveillance cameras (now equipped with battery backup) revealed that a single burglar, again dressed with a black garbage bag over his body, entered in the same manner as the May 15 attempted burglary and cut the power in the building. This time the burglar successfully stole $29,074.

Video surveillance at the Candy Store showed Mr. Nollette talking on his cell phone with someone at 2:02 a.m. Mr. Nollette later told his friend Gary Solem that he had been on the telephone with a "friend" while the "friend" committed the burglary. Police obtained cell phone records that established Mr. Nollette was talking to Mr. Wilcoxon during the burglary. The records also identified the cell tower that handled each of the phone calls. A call lasting 84 seconds made by Wilcoxon to Nollette at 1:59 a.m. was relayed by a cell tower within a couple hundred yards of Lancer Lanes.

Sometime after 2:00 a.m., Wilcoxon and Nollette jointly showed up at the home of their friend, Eric Bomar. They both appeared excited. Wilcoxon told Bomar that he had "pulled off the Lancer thing" and described how he had broken in to the establishment and taken the money.

Charges of second degree burglary, first degree theft, and conspiracy to commit burglary were filed against Mr. Wilcoxon. A single charge of conspiracy to commit

3

second degree burglary was filed against Mr. Nollette. The prosecutor also filed notice of intent to seek an exceptional sentence against Mr. Wilcoxon, alleging that both the burglary and theft charges constituted major economic crimes and constituted a breach of trust by Mr. Wilcoxon.

Mr. Wilcoxon moved to sever his trial from Mr. Nollette's trial; he focused his argument primarily on the statements made by Mr. Nollette to Mr. Solem. After hearing, the trial court denied the motion to sever. Mr. Wilcoxon did not renew his motion to sever at the end of trial.

The parties agreed that Sergeant Bryon Denny could present the cell phone records because there was no local telephone official who could do so. The court authorized telephonic testimony from the telephone company officials if desired by the defense. At a subsequent hearing the day before trial, defense counsel moved in limine to prohibit any witness from testifying that the cell phone records showed that a telephone call was made from Lancer Lanes. The trial court granted the motion in part and prohibited the prosecution from presenting evidence that the telephone call was made from inside Lancer Lanes. However, testimony that a specific telephone tower had handled a specific call was relevant and would be admitted.

Defense counsel asked the court to expand the ruling to prohibit reference to the specific towers that routed the phone calls. When that was denied, counsel moved to continue the trial in order to seek an expert to testify. The court denied the continuance,

noting both that the State was not using the officer as an expert and that the request came one hour before the end of business the day before trial. The motion was renewed when the sergeant testified at trial. The court again denied the continuance and noted that the sergeant was not testifying as an expert and that the prosecutor should not seek to elicit opinion testimony from him.

Sergeant Denny did testify for the jury that cell phone calls generally were routed from the tower with the strongest signal belonging to the service provider to the tower providing the strongest signal for the receiving party's service provider. While that often would mean the closest tower would provide the service, various factors or obstructions could mean that a more distant tower would handle the call. Neither defendant testified at trial, but each called a sibling as their sole witness.

The jury was unable to reach a verdict in Mr. Nollette's case and a mistrial was declared.[3] The jury did find Mr. Wilcoxon guilty on all three counts and also found the presence of the two aggravating factors on the theft and burglary offenses. The trial court, citing the two aggravating factors, imposed exceptional concurrent sentences of 24 months in prison on the burglary and theft convictions. Mr. Wilcoxon then timely appealed to this court. A commissioner granted his request for an accelerated hearing of his appeal.

---

[3] The records of this appeal do not indicate the resolution of that case.

ANALYSIS

Mr. Wilcoxon contends that his right to confront witnesses against him was violated in two respects when the court permitted Mr. Nollette's statements to come in to evidence via Mr. Solem. We will treat those arguments as one before turning to two separate arguments Mr. Wilcoxon raises concerning the cell tower testimony presented by Sergeant Denny.

*Confrontation of Co-Defendant*

Mr. Wilcoxon contends that his right to confront Mr. Nollette was violated by the failure of the court to sever the trials of the two defendants and the failure to sua sponte provide a limiting instruction for the jury. We conclude that there was no violation of the right to confrontation because Nollette's statements to Solem were not "testimonial" within the meaning of the Sixth Amendment.

The Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." This protection has special significance in the context of co-defendants when one of them has made statements to the police that implicate the other defendant. *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). There the court ruled that the defendant Bruton's confrontation rights were violated when the co-defendant's statement, implicating Bruton in a robbery, was admitted into evidence at their joint trial even though it was accompanied by a limiting instruction that told the jury only to consider the statement against the confessing defendant. *Id.* at 124-26. The court

6

noted that severing trials or deleting the confession's reference to the co-defendant could be effective remedies. *Id.* at 131-34.

In order to comply with *Bruton*, Washington adopted CrR 4.4(c). *State v. Hoffman*, 116 Wn.2d 51, 75, 804 P.2d 577 (1991). That provision requires severance when one co-defendant's statement refers to the other co-defendant unless the statement is not offered into evidence or references to the co-defendant are deleted from the statement. CrR 4.4(c)(1)(i), (ii). Mr. Wilcoxon sought severance on this basis prior to trial.[4]

The United States Supreme Court revolutionized its confrontation clause jurisprudence in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). There the court concluded that the right of confrontation extended only to "witnesses" who "bear testimony" against the accused. *Id.* at 51. This "testimonial" hearsay rule reflected "an especially acute concern with a specific type of out-of-court statement." *Id.* "An accuser who makes a formal statement to the government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.*[5]

---

[4] CrR 4.4(a)(2) provides that the failure to renew a pre-trial motion for severance acts as a waiver of the severance request. Because Mr. Wilcoxon did not renew his motion to sever at trial, he cannot rely upon the rule for relief and does not attempt to do so on appeal.

[5] The court subsequently concluded that statements made to government officials in order to obtain emergency aid were not testimonial in nature. *Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011); *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

Armed with this new understanding of the confrontation clause, courts have had to apply the testimonial hearsay test to varying circumstances. The Washington Supreme Court recognized that *Crawford* was particularly concerned with the "involvement by a government official" in obtaining the testimonial hearsay. *State v. Shafer*, 156 Wn.2d 381, 389, 128 P.3d 87 (2006) (child's disclosure of sexual abuse to her mother was not testimonial hearsay). "The proper test to be applied in determining whether the declarant intended to bear testimony against the accused is whether a reasonable person in the declarant's position would anticipate his or her statement being used against the accused in investigating and prosecuting the alleged crime." *Id.* at 390 n.8.

Application of that standard leads us to conclude that Nollette's statement to his acquaintance Solem was not testimonial in nature. No government official was involved in obtaining the statement and a reasonable person would not believe it would be used against Mr. Wilcoxon for the prosecution of a crime. Mr. Nollette simply was bragging about a successful heist; he was not giving formal witness against his co-defendant. This statement was not "testimonial hearsay." Rather, it was a "casual remark" to an acquaintance. *Crawford*, 541 U.S. at 51.

Accordingly, Mr. Wilcoxon's claim that the trial court needed to sever the cases to satisfy *Bruton* and its progeny fails.[6] Similarly, his argument that the court had a duty sua

---

[6] Mr. Wilcoxon did not contend in the trial court that the statements were inadmissible except for the *Bruton* claim.

8

sponte to give a limiting instruction concerning the testimony also fails. As there was no

constitutional violation, there is no basis for raising this claim initially on appeal.[7]

RAP 2.5(a)(3). Unlike the federal authority cited by Mr. Wilcoxon, there is no basis in

Washington law for judges giving limiting instructions without request from a party. ER 105

(judge shall give limiting instructions "upon request"). A court is under no duty to give a

limiting instruction sua sponte. *See State v. Noyes*, 69 Wn.2d 441, 446-47, 418 P.2d 471

(1966). *Accord, State v. Russell*, 171 Wn.2d 118, 123-24, 249 P.3d 604 (2011) ("Since

*Noyes*, this court has continued to hold that absent a request for a limiting instruction, the

trial court is not required to give one sua sponte."); *State v. Athan*, 160 Wn.2d 354, 383,

158 P.3d 27 (2007) (the omission of a limiting instruction is not reversible error where

defendant fails to request the instruction during trial); *State v. Myers*, 133 Wn.2d 26, 36,

941 P.2d 1102 (1997) ("The failure of a court to give a cautionary instruction is not error if

no instruction was requested."); *State v. Hess*, 86 Wn.2d 51, 52, 541 P.2d 1222 (1975) (no

reversible error for the lack of a limiting instruction where no instruction requested).

"A party's failure to request a limiting instruction constitutes a waiver of that

party's right to such an instruction and fails to preserve the claimed error for appeal."

*State v. Newbern*, 95 Wn. App. 277, 295-96, 975 P.2d 1041 (1999). The failure to give

---

[7] In light of *Bruton* itself overturning a conviction because the court had given a
limiting instruction rather than severing the trials, we question whether a limiting
instruction can ever be required by *Bruton*.

9

a limiting instruction is not constitutional error, while the failure to request an instruction waives the claim on appeal. For both reasons, the argument that the trial court sua sponte needed to give a limiting instruction fails.

Although we conclude that there was no Sixth Amendment violation in this case, the result would be no different if there had been a constitutional violation. Errors of constitutional magnitude are harmless if the reviewing court is convinced, beyond a reasonable doubt, they did not contribute to the verdict. *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). That is the situation here. Although Mr. Nollette's statement that his "friend" had committed the burglary was somewhat prejudicial to Mr. Wilcoxon in light of the evidence connecting him to the telephone call, that evidence was primarily useful against Mr. Nollette on the conspiracy count—and the jury failed to reach a verdict on that count. With respect to Mr. Wilcoxon, the "friend" statement paled in light of the other evidence against him, particularly his admissions to Eric Bomar. If there had been error, it was harmless beyond a reasonable doubt.

Mr. Wilcoxon's Sixth Amendment claims are without merit. The convictions are affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040

*Cell Telephone Records*

Mr. Wilcoxon challenges Sergeant Denny's testimony concerning the location of the cell phone towers servicing the calls made in this case, arguing that it was irrelevant and lacked adequate foundation. We address those two arguments together and separately address his remaining claim that the court erred in denying his request for a continuance.[8]

*Evidentiary Arguments.* Trial judges have great discretion in the admission of evidence and decisions to admit or exclude evidence will be overturned only for manifest abuse of discretion. *State v. Luvene*, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995). Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). A court also abuses its discretion when it applies the wrong legal standard. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

Evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. Relevant evidence generally is admissible at trial, but can be excluded where its value is substantially outweighed by other considerations such as the possibility of confusing or misleading the jury. ER 402; ER 403.

---

[8] We do not separately address Mr. Wilcoxon's catch-all contention that cumulative errors deprived him of a fair trial.

These considerations govern Mr. Wilcoxon's challenge to the relevance of the cell tower location information. The defense had sought to exclude testimony that the telephone records showed that a phone call had been made from inside Lancer Lanes. The court agreed and excluded that specific evidence, but denied a subsequent request to exclude testimony concerning which cell tower locations handled the telephone calls made by the two defendants that morning. Mr. Wilcoxon now argues that the tower location information was irrelevant since it could not pinpoint the location of the callers.

He views the evidence too narrowly. As noted, the standard for relevance is whether the evidence makes another fact "more probable or less probable." In light of the testimony that the telephone calls are normally routed to the nearest cell tower used by the service provider that is in clear line of transmission to the caller, the location of the tower handling the calls was circumstantial evidence of the caller's location. More critically to this case, the information was particularly relevant to rebutting Mr. Wilcoxon's statement to police that after leaving the Candy Store he had gone to his sister's house in Lewiston and did not return to Clarkston that night. The cell phone evidence showed that after leaving the Candy Store in Lewiston, he placed calls that pinged off the Clarkston cell tower near Lancer Lanes. While not able to precisely locate where the calls had originated, the evidence tended to suggest a downtown Clarkston location rather than a Lewiston

12

location. That evidence made the alibi statement to the police "less probable" and, therefore, was relevant. The trial court did not err in admitting the testimony.

Mr. Wilcoxon also argues that the court erred in permitting Sergeant Denny to testify concerning the telephone records. He waived any objection to this testimony by failing to object below. When this issue first arose at a pretrial hearing, the question was whether the document would be admitted as a business record through a certificate from the records custodian or if Sergeant Denny, who had training in reading the records and explaining how cell towers worked, would testify. The defense did not object to the proposed testimony then or later at trial. That failure dooms his current argument.

"A party who objects to the admission of evidence on one ground at trial may not on appeal assert a different ground for excluding that evidence." *State v. Price*, 126 Wn. App. 617, 637, 109 P.3d 27 (2005). "And a theory not presented to the trial court may not be considered on appeal." *Id.* That is the case here. Neither defendant ever objected at trial to the ability of Sergeant Denny to testify. He explained his training for understanding the records and how cell towers function. The trial court accepted the foundation and cautioned the prosecutor not to seek information beyond the sergeant's training and experience. That restriction was honored. Moreover, no opinion testimony was sought from Sergeant Denny. Therefore, questions of whether or not he was a qualified expert are irrelevant. The issue was whether he had the experience that allowed

him to discuss the records. The trial court was satisfied that he knew what he was talking

about and the record bears out that determination.

The defense waived any objection to the sergeant's testimony. Even if there had

been an objection, there was an adequate foundation for the testimony. Accordingly, this

argument, too, is without merit.

The court did not err in admitting the phone records and permitting the testimony

concerning them.

*Continuance Request*

Mr. Wilcoxon also argues that he was denied due process when his eve of trial

request for a continuance was denied. The trial court acted within its discretion because

the defense never established a need for the expert witness.

The decision to grant or deny a motion for continuance rests within the sound

discretion of the trial court, and the reviewing court will not disturb the trial court's ruling

absent a showing that the trial court abused its discretion. *State v. Bailey*, 71 Wn.2d 191,

195, 426 P.2d 988 (1967). When deciding whether to grant a continuance, trial courts may

consider many factors, including surprise, diligence, redundancy, due process, materiality,

and maintenance of orderly procedure. *State v. Eller*, 84 Wn.2d 90, 95, 524 P.2d 242

(1974); RCW 10.46.080. When a case has been previously continued, an even stronger

showing in support of the subsequent request is necessary. *State v. Barnes*, 58 Wn. App. 465, 471, 794 P.2d 52 (1990), *aff'd*, 117 Wn.2d 701, 818 P.2d 1088 (1991).

The court did not abuse its discretion in denying the continuance request. The request was made on the eve of a joint trial that had been previously continued. The co-defendant did not want his trial continued any further. A continuance for Mr. Wilcoxon would have resulted in a de facto severance of the trials, even though a motion to sever had failed at an earlier hearing. The motion was ostensibly brought for the purpose of responding to Sergeant Denny's testimony, even though there was no objection to his testimony and no indication that anything he would say about the records was subject to a contrary viewpoint.[9] Indeed, the defense never was able to tell the court that there was any missing information that an expert witness could provide that was important to the defense. The contents of Sergeant Denny's expected testimony had been disclosed and the witness made available for interview. There was no surprising information disclosed that justified an extension of time for the defense to prepare.

The trial court had very tenable grounds for denying the late continuance request. The defense did not establish that there was missing evidence that it needed time to

---

[9] At trial, defense counsel extensively cross-examined the sergeant and developed the limitations of the cell tower records for the jury.

15

No. 32226-2-III
*State v. Wilcoxon*

develop. Accordingly, there was no violation of the defendant's right to prepare for trial.

The court did not abuse its discretion in denying the continuance.

Affirmed.

Korsmo, J.

WE CONCUR:

Siddoway, C.J.

Fearing, J.

16