ARNETT *v*. STATE OF INDIANA.

[No. 268S36. Filed March 5, 1969.]

*Lorin H. Kiely* and *Phillip L. Kiely*, of Evansville, for appellant.

*John J. Dillon*, Attorney General and *Richard V. Bennett*, Deputy Attorney General, for appellee.

DEBRULER, C.J.—The Appellant was charged by affidavit with Assault and Battery with Intent to Kill. Upon Appel-

lant's plea of not guilty a trial by jury was had and the Appellant was convicted and sentenced to Indiana State Prison for a period of not less than two years and not more than fourteen years.

Appellant urges as error the overruling of his motion for a new trial, which motion complained that it was error for the trial judge to allow testimony as to the length of time the victim of Appellant's attack was hospitalized and further that it was error to allow the prosecution to introduce the gun purportedly used by the Appellant, during cross-examination.

The evidence is as follows: The victim Bryant arrived at the Belmont Tavern at 6:00 p.m. and stayed until closing time at 1:00 a.m. on April 26, 1967. Bryant drank and played pool all evening. The Appellant arrived at the same tavern at about 10:30 a.m. on April 25, 1967, and left at 7:00 p.m. the same day. He returned to the same tavern about 11:00 p.m. and stayed until closing time. The bartender and the owner testified that the Appellant drank quite heavily and that no words passed between the Appellant and Bryant.

At closing time, 1:00 a.m., Bryant left the tavern by the side door and the Appellant left by the front door. The Appellant returned about 10 minutes later, knocked on the side door and told the bartender that he wanted to show him something. The owner and bartender followed the Appellant to the parking lot at the rear of the tavern where they found Bryant, lying on his back unconscious beside his car. Bryant's face was bloodied, his shirt was torn and he appeared to have been beaten.

Bryant testified that as he left the tavern and got into his car the Appellant approached and accused him of "running around" with his wife. He testified further that as he attempted to leave the car and go back to the tavern, the Appellant struck him several times with the gun and the

gun went off. The next thing Bryant knew was when he woke up in the Welborn Hospital.

In presenting his evidence, the Appellant testified that as he was passing the parking lot that night after closing hours at the tavern, Bryant was standing beside his car drinking a bottle of beer. The Appellant further testified that he approached Bryant and accused him of fooling around with his wife after Bryant called the Appellant a vile name. The Appellant stated that when Bryant attempted to hit him with the beer bottle he hit Bryant several times with the gun. Appellant testified that he did not know that the gun discharged or that Bryant had been shot.

Testimony further revealed that Bryant had seen the Appellant's wife on several occasions, that on the night involved he did not have a gun and that as a result of the incident Bryant sustained a gun shot wound, broken jaw and head and facial injuries.

At one point in the testimony of the State's witness, Bryant, the following occurred:

"Q. Well, you were taken to a hospital, you awakened up in a hospital. What hospital was that?

A. Welborn.

Q. All right, how long did you remain at Welborn Hospital?

A. From that time until the next Tuesday, I believe.
MR. KIELY: Now, if the court please, we object to him going into detail as to the hospital, because it is not part of the case in chief, it is not part of the res gestae, it is not competent evidence in this case.
COURT: I will permit the question to be answered. I will overrule the objection.

Q. The question was, how long were you in the hospital at that time?
MR. KIELY: Same objection.
COURT: Objection overruled.

A. From Wednesday morning, April 26 until the following Tuesday, I think it was Monday or Tuesday, I really don't know, when I went to Marion.

Q. Yes. Then what is Marion?

A. V.A. Hospital, at Marion, Illinois.

Q. How long did you remain there? At Marion?

A. About two weeks.

MR. KIELY: Just a minute. We object to how long he remained in the Marion Hospital for the reason it is irrelevant, incompetent and immaterial, not relevant to the issues involved in this case.

COURT: I will overrule the objection.

MR. KIELY: And not part of the res gestae.

Q. All right, after the two weeks at the Marion V.A. Hospital, were you hospitalized somewhere after that?

MR. KIELY: We object to that, if the court please, for the reason it is not relevant to the issues involved in this case, and for the further reason it is remote, has nothing to do with this case before the court.

COURT: I will overrule the objection.

Q. You may answer the question.

A. What was the question?

Q. The question was, what further hospitalization, if any, did you have after the Marion V.A. Hospital?

A. I was transferred from Marion V.A. Hospital to John Cochran V.A. Hospital in St. Louis.

Q. How long were you there?

A. Until the 14th of August, this year.

Q. And were you discharged at that time?

A. For a couple of weeks.

Q. All right, then did you go back to any hospital?

A. Yes, sir.

Q. And was that because of your condition you had originally gone for?

A. Yes, sir.

Q. Where did you go?

A. Back to St. Louis.

MR. KIELY: We object, if the court please, just a minute, we object and move to strike his answer. We

object for the reason it is too remote, and not a part of the issues involved in this criminal case. It tends to create prejudice in the minds of the jurors. It is prejudicial.

COURT: I will overrule the objection. I will permit you to put in testimony as to the length of the stay in the hospital by this witness. So if you want to ask how long he was in the hospital altogether, all right.

Q. How long were you in the hospital altogether after the early morning of the 26th of April, this year?

MR. KIELY: Same objection as I stated above.

COURT: Show the court overrules the objection.

A. I exactly don't remember. I know the first time I was out was the 14th of August. I have been four or five times."

The Appellant contends that the court erred in overruling his objections in the foregoing excerpt from the testimony of the witness Bryant and as a result thereof the Appellant did not have a fair trial. The essence of Appellant's argument is that the admission of this testimony could serve no purpose but to inflame the jury and as such was highly prejudicial to the Appellant. Appellant contends further that the testimony was not relevant to any issue in the case.

Appellant's argument is without merit. Where, as here, intent to kill is a material issue of the crime of which the Appellant was charged, evidence of the length of the victim's hospital confinement may be admitted in evidence for the consideration of the jury in determining Appellant's intent. Since the evidence of the victim's hospital confinement was relevant to an issue in the case and since there was testimony presented that the wounds inflicted upon the witness were very severe, it was well within the discretion of the trial judge to overrule Appellant's objections and admit the testimony.

This Court faced a similar question in *Gayer* v. *State* (1965), 247 Ind. 113, 210 N. E. 2d 852. In that case the de-

fendant was convicted of the offense of assault and battery and on appeal urged as error the introduction of testimony as to the future physical condition of the victim. This Court said at p. 855 of 210 N. E. 2d:

> "In the case at bar, we do not feel that the trial judge abused his discretion since the testimony in question was relevant for a number of reasons. The testimony could be considered by the jury for the purpose of deciding whether the acts charged in the affidavit were done in a rude, insolent, and angry manner."

Courts of other states have also held, indeed *Claypoole* v. *Commonwealth* (Ky. 1960), 337 S. W. 2d 30, 87 A. L. R. 2d 923, cited by Appellant supports this contention:

> "We have held that testimony of a physician which shows the character and extent of an injury is not objectionable on the ground that such information tends to throw light upon the question of whether the injury was inflicted with intent to kill." See also Annotation at 87 A. L. R. 2d 936.

The Appellant next argues that it was reversible error to allow the introduction of a gun purportedly used by the Appellant, into evidence on cross-examination. Called as a witness in his own behalf, the Appellant testified on direct examination that he had a gun in his possession on the night of the attack and that he struck the victim Bryant with the gun and that it discharged at that time. On cross-examination he testified that he did not have a license to carry the gun, that he hit Bryant with the gun, that the gun was a Colt automatic 380, that he left the gun at his mother's after the incident and finally that the gun was his own. It was at this point that the gun itself was identified by the Appellant as the same gun used by him to inflict the injuries to victim Bryant; the State then offered the gun and the court admitted it into evidence over the Appellant's objection.

Appellant's objection is basically that it was improper for the trial judge to permit introduction of the gun into evi-

dence as part of cross-examination of the Appellant. We do not find, nor does Appellant cite, relevant Indiana cases which support this contention which we consider erroneous.

We hold that it is within the discretion of the trial judge to admit physical objects into evidence which are within the scope of matters gone into on direct examination by a defendant in a criminal case. The opposing party has an opportunity on redirect examination to test the authenticity or relevance of any evidence so admitted.

In *Boyle* v. *State* (1885), 105 Ind. 469, 5 N. E. 203, there is support for this holding, as follows:

> "A defendant in a criminal case, who elects to testify as a witness, is to be treated, so far as the cross-examination is concerned, as any other witness; this defendant did elect to testify as a witness, and hence is to be treated as any other witness upon cross-examination. He put himself in the position of a witness, and as a witness he must be regarded (omitting citations).
>
> "The cross-examination of a witness must be confined to the subject opened by direct examination. This settled rule does not, however, restrict the cross-examination to the specific facts developed by the direct examination, but does confine it to the subject of that examination. Where a subject is opened by the direct examination, the cross examining counsel may go fully into the details of the subject, and is not confined to the particular part of it embraced within the questions asked upon the direct examination. A subject can not be so partitioned by a direct examination as to cut down the cross-examination to the specific matters developed by the questions of the counsel who conducts the examination in chief, for, once a subject is entered upon, it is opened to a full and detailed investigation on cross-examination" (omitting citations).

In the instant case the Appellant himself brought the gun within the subject matter of his direct examination. Being within the proper scope of cross-examination we can find no sound reason for prohibiting the admission of the gun into evidence nor do we find any prejudice to the Appellant in its admission.

The judgment is affirmed.

Arterburn and Givan, JJ., concur; Jackson, J., concurs with opinion; Hunter, J., dissents with opinion.

### CONCURRING OPINION

JACKSON, J.—I concur in the result of Judge DeBruler's opinion on the theory that the appellant did not interpose timely and proper procedural objections to the testimony of State's witness, Bryant, as shown on pages 3 and 4 of the opinion. The questions, answers, objections and rulings of the court are as follows:

"Q. Well, you were taken to a hospital, you awakened up in a hospital. What hospital was that?

A. Welborn.

Q. All right, how long did you remain at Welborn Hospital?

A. From that time until the next Tuesday, I believe.

(1) MR. KIELY: Now, if the court please, we object to him going into detail as to the hospital, because it is not a part of the case in chief, it is not competent evidence in this case.

COURT: I will permit the question to be answered. I will overrule the objection.

Q. The question was, how long were you in the hospital at that time?

(2) MR. KIELY: Same objection.

COURT: Objection overruled.

A. From Wednesday morning, April 26 until the following Tuesday, I think it was Monday or Tuesday, I really don't know, when I went to Marion.

Q. Yes. Then what is Marion?

A. V.A. Hospital at Marion, Illinois.

Q. How long did you remain there? At Marion?

A. About two weeks.

(3) MR. KIELY: Just a minute. We object to how long he remained in the Marion Hospital for the

reason that it is irrelevant, incompetent and immaterial, not relevant to the issues involved in this case.

COURT: I will overrule the objection.

MR. KIELY: And not part of the res gestae.

Q. All right, after the two weeks at the Marion V.A. Hospital, were you hospitalized somewhere after that?

(4) MR. KIELY: We object to that, if the court please, for the reason it is not relevant to the issues involved in this case, and for the further reason it is remote, has nothing to do with this case before the court.

COURT: I will overrule the objection.

Q. You may answer the question.

A. What was the question?

Q. The question was, what further hospitalization, if any, did you have after the Marion V.A. Hospital?

A. I was transferred from Marion V.A. Hospital to John Cochran V.A. Hospital in St. Louis.

Q. How long were you there?

A. Until the 14th day of August, this year.

Q. And were you discharged at that time?

A. For a couple of weeks.

Q. All right, then did you go back to any hospital?

A. Yes, sir.

Q. And was that because of your condition you had originally gone for?

A. Yes, sir.

Q. Where did you go?

A. Back to St. Louis.

(5) MR. KIELY: We object, if the court please, just a minute, we object and move to strike his answer. We object for the reason it is too remote, and not a part of the issues involved in this criminal case. It tends to create prejudice in the minds of the jurors. It is prejudicial.

COURT: I will overrule the objection. I will permit you to put in testimony as to the length of the stay in the hospital by this witness. So if you want to

ask how long he was in the hospital altogether, all right.

Q. How long were you in the hospital altogether after the early morning of the 26th of April, this year?

(6) MR. KIELY: Same objection as I stated above.
COURT: Show the court overrules the objection.

A. I exactly don't remember. I know the first time I was out was the 14th of August. I have been four or five times."

I have, in an attempt to shorten this opinion as much as possible, incorporated so much of the questions, objections, answers and rulings as are necessary for a determination as to whether or not reversible error was committed by the court in its rulings as to the admissibility of evidence as to hospitalization. Such determination will here have to be made on narrow technical grounds.

In order to present my conclusions on the various objections and rulings I have marked them by numbered circles and from hereon shall refer to them by appropriate consecutive reference thereto.

Objection (1) presents no questions here for the reason the witness had already answered the question and appellant did not move to have the answer stricken and the jury admonished to disregard the same. The question was not properly raised or saved as the objection, without the motion to strike, raised no question.

Objection (2) in my opinion presents no question here for the reason that while the objection was proper and should have been sustained it was merely repetitious of the previous question that had been previously answered and appellant was not injured thereby.

Objection (3) was made after the witness had answered the question, no motion was made to strike the answer, and in the absence of such motion an objection to the question after the witness has answered presents no question here on appeal.

Objection (4) relates to the question immediately preceding the objection, is proper and should have been sustained. The court's ruling however is harmless as the witness had to ask what the question was, the question was then somewhat changed and rephrased, no objection was made to the new question, no motion made to strike the answer or objection made to the next several questions and answers. If there was harmful error here appellant waived it by his failure to properly and promptly raise the question.

Objection (5) and the motion to strike would refer to the question and the answer immediately preceding the same. In view of the court's ruling on this objection and objection (6) and the answer thereto I will discuss and consider them together. In my opinion the failure of the court to sustain either objection (5) or (6) did not harm appellant and did not constitute reversible error for the reason that the witness had previously testified, in substance at least, to the same effect without objection on the part of appellant.

I agree with Judge Hunter's dissent herein that the amount of time spent by the state's witness in various hospitals is not always relevant in proving intent to kill, nor do I feel in this case that the length of hospitalization is evidence of such intent. It is my contention, in the case at bar, that if appellant's cause was prejudiced by evidence of hospitalization the blame must rest on appellant's shoulders for failure to promptly, properly and precisely follow the rules of criminal practice and procedure and thus save the questions for consideration here. I want it clearly understood that what I have here said is not to be construed as criticism of counsel. We here have the advantage of having before us the transcript, briefs, authorities and the time necessary for careful study, counsel in the heat of trial has none of these advantages.

## Dissenting Opinion

Hunter, J.—I must respectfully dissent to the opinion of the majority in this case.

I do not believe that the prolonged testimony by the state's witness regarding the amount of time he spent in various hospitals is relevant in proving that his assailant had the requisite intent to kill at the time of the alleged offense. I concede that the character or severity of the victim's wounds may be shown to establish such an intent, but the length of stay at a hospital may be determined by factors which have no immediate bearing on the assault, itself. For example, if a laceration had become infected, the hospitalization of the witness would have to have been prolonged, and yet this infection would have absolutely no relevancy as to the intent of the assailant when he inflicted the laceration. On the other hand, I can well understand how the witness's having undergone a lengthy period of hospitalization could inflame and prejudice the jurors against a defendant who has been accused of intentionally causing such a mishap.

I disagree that this court's decision in *Gayer* v. *State* (1965), 247 Ind. 113, 210 N. E. 2d 852, lends support to the position of the majority. The testimony in question in that case read as follows:

"Q. What is your opinion, if any, as to how his condition will remain? What it will become?

. . .

A. Of course, I haven't seen him since September when he was discharged from the hospital, but in my opinion he will never improve satisfactorily enough, if he improves at all, to carry on any duties on his own as far as taking care of himself. In my opinion it's a permanent injury." *Gayer* v. *State, supra,* at 115-16.

This question, and the answer it sought to evoke, did not relate to the period of hospitalization, but rather to the severity of the injury. The case at bar is a significant ex-

tension of that case. I believe we should try an accused on the crime with which he is charged and restrict the evidence admissible at his trial to facts which tend to prove the requisite elements of that crime.

NOTE.—Reported in 244 N. E. 2d 912.