379 N.E.2d 1032 (1978)
John WASHINGTON, Appellant (Defendant below),
v.
STATE of Indiana, Appellee (Plaintiff below).
No. 2-377A93.
Court of Appeals of Indiana, Fourth District.
September 7, 1978.
*1033 Palmer K. Ward, Indianapolis, for appellant.
Theo. L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.
YOUNG, Judge.
The appellant, Washington, was charged and convicted of assault and battery with intent to kill, and of carrying a handgun without a license. He was sentenced to an indeterminate term of two to fourteen years on the former charge, and because of a prior conviction of the latter, to five years on that offense under the enhance penalty provision. He thereupon brought this appeal.
Washington contends that there was insufficient evidence to support his conviction in that the State did not adequately prove his intent to kill, that the victim could not identify the defendant as his assailant, and that there was no evidence of great bodily harm inflicted upon the victim. He argues further that the State did not adequately prove a prior conviction of carrying a handgun without a license, and therefore he was erroneously sentenced under the enhanced penalty provision. We affirm his conviction.
Washington's argument regarding the victim's failure to identify him as his assailant, while included in the motion to correct errors, is not pursued in the appellant's *1034 brief. Therefore it is waived. Ind. Rules of Appellate Procedure, Appellate Rule 8.3(A). The State claims that Washington's argument with respect to great bodily harm should not here be considered, since it was not included in the motion to correct errors. That position ignores recently decided authority. Ind. Rules of Procedure, Trial Rule 50(A)(5) provides that the issue of sufficiency of the evidence may be raised for the first time on appeal in criminal cases. Collins v. State (1977), Ind., 364 N.E.2d 750, 754, overruling Finch v. State (1975), Ind., 338 N.E.2d 629, in which it was held that the motion to correct errors must specify in what respect the evidence is insufficient. In Whitfield v. State (1977), Ind., 366 N.E.2d 173, 174, it was held that
If complete omission of this issue from a motion to correct errors does not bar its consideration upon appeal, imperfectly specific inclusion in the motion will not do so either.
It naturally follows that arguing a different ground than those included in the motion to correct errors is equally permissible. Therefore we will consider all grounds argued in the appellant's brief in determining the sufficiency of evidence supporting his conviction.
When reviewing the sufficiency of evidence on appeal, this Court will not weigh the evidence but will consider only that evidence favorable to the judgment and all reasonable inferences arising from it. If there is substantial evidence of probative value in support of the verdict, it will not be disturbed. Collins v. State, supra.
In order to make a prima facie case of assault and battery with intent to kill, the State must present evidence on the basis of which a reasonable jury could find beyond a reasonable doubt that the accused unlawfully touched another human being in a rude, insolent or angry manner, with intent to kill. Reed v. State (1970), 255 Ind. 298, 263 N.E.2d 719. The degree of harm inflicted is not an issue. Gutowski v. State (1976), Ind. App., 354 N.E.2d 293, 297; Holloway v. State (1976), Ind. App., 352 N.E.2d 523, 525. Washington relies on Defries v. State (1976), Ind., 342 N.E.2d 622, in support of his argument. That case deals with the crime of aggravated assault and battery, of which great bodily injury is an element. This is a different crime than that Washington is convicted of, although it may be a lesser included offense if great bodily injury is alleged in the charge. Thomas v. State (1970), 254 Ind. 600, 261 N.E.2d 588.[1]
The State's evidence, in this case, consists of the following, arranged chronologically with respect to the occurrences recounted. A police officer testified that he arrested Washington, whom he identified in court, on July 17, 1976, for carrying a handgun without a license. He marked that handgun with his initials and the date. He identified the handgun offered as evidence in the present case as the same gun. A second police officer identified Washington as the man named John Lee Washington who he saw appear in court on July 19, 1976, and plead guilty of carrying a handgun without a license, for which he was sentenced to thirty days in the Marion County Jail. The gun was ordered to be destroyed at that time. A certified copy of this conviction was admitted into evidence. A third officer testified that he worked in the Firearms Registration Office and that he received a request from one identifying himself as John Lee Washington for the return of the gun. Because he was new and didn't know otherwise, he authorized the release of the gun, on August 19, 1976, to John Lee Washington.
The State called five witnesses, the victim, an employee of a pawnshop, and three *1035 police officers, whose testimony are summarized in the following account.
On August 30, 1976, the victim, Mr. Sims, was sitting by the barber shop on Indiana Avenue eating pork skins. A man sat down beside him to his left and asked him for his money. Mr. Sims asked him to repeat the question, upon which the man again asked him for his money and began to remove a gun from his pocket. Mr. Sims tried to restrain his arm and the man leaped up, endeavoring to break away, and dragged Mr. Sims some distance before he lost his hold. The man ran into the street and drew his gun, whereupon Mr. Sims drew a small knife. The man returned to the sidewalk at a distance of about two car lengths southeast of Mr. Sims and commenced to fire at him. Mr. Sims, watching the man closely, turned his side towards him at each shot. Two grazed his back. Another went through his shoulder and he fell.
Upon the first shot being heard, a retired police officer, now an employee of a pawnshop on Indiana Avenue, looked out the door of his shop and saw a man whom he identified as the appellant, Washington, firing a gun. He saw a crowd of people scattering and one fall. He saw Washington stop, reload his gun, and continue firing. Then, Washington ceased shooting, wrapped the gun in his jacket, and walked southeast towards the pawnshop. Mr. Sims, hearing the firing cease, got to his feet and started for home in the opposite direction.
The sound of shots also drew the attention of a police officer standing just around the north corner of that block. He noted a bus stopped at the intersection, in which the passengers were getting down onto the floor, and he looked around the corner down Indiana Avenue. He saw a man, whom he identified in court as Washington, firing shots towards him. He flagged down a passing police car, and the driver got out to join him. They saw Washington reload and then followed him as he walked down to the pawnshop. A second police car, responding to a radio call, swerved around the corner and stopped in front of that establishment. The driver opened his car door, aimed a gun at Washington and commanded him to place his rolled jacket on the ground and raise his hands. On the third repetition of the command, Washington did so, by which time the officers on foot had arrived. They found the gun wrapped in the jacket, one officer marked it with his initials, and then they took Washington into custody. The officers then retrieved Mr. Sims who was headed west, dressed his wounds and sent him to the hospital.
We find this evidence ample to sustain the trial court's finding of guilty, regarding both the prior conviction and the commission of assault and battery with intent to kill. The identification of Washington by the arresting officer and an officer who witnessed his guilty plea, and the introduction into evidence of a certified copy of the judgment, is certainly adequate to sustain the finding of a prior conviction.
Regarding proof of intent, it is long-settled that this element may be inferred from the deliberate use of a deadly weapon in a manner reasonably calculated to cause death. Vaughn v. State (1972), 259 Ind. 157, 284 N.E.2d 765; Liston v. State (1969), 252 Ind. 502, 250 N.E.2d 739; Stock v. State (1969), 252 Ind. 67, 245 N.E.2d 335; Petillo v. State (1950), 228 Ind. 97, 89 N.E.2d 623; Doby v. State (1975), Ind. App., 336 N.E.2d 395; Miller v. State (1974), 159 Ind. App. 503, 307 N.E.2d 889. The uncontradicted evidence discloses that Washington fired at Mr. Sims until he saw him drop, pausing only to reload his gun. Two bullets grazed Mr. Sim's back and a third entered his shoulder. As we previously noted, great bodily harm is not an element of assault and battery with intent to kill. However, the extent of injury can be relevant to the issue of intent. Smith v. State (1975), Ind. App., 330 N.E.2d 384. We agree with the Court in Thomas v. State, supra, that shooting someone in the back is likely to cause great bodily injury. Clearly, these facts give rise to the inference that Washington intended to kill Mr. Sims. The judgment of the trial court is therefore affirmed.
*1036 LOWDERMILK, J., concurs (sitting by designation).
ROBERTSON, J., concurs (sitting by designation).
NOTES
[1] The Court in Thomas found that element sufficiently alleged, stating

"It is inconceivable that a person could commit an assault and battery with intent to kill another person as charged in this case without also intentionally and knowingly inflicting great bodily harm or disfiguring the assaulted person." 261 N.E.2d at 590.
We note with interest that in that case, the charge was that the accused shot someone in the back with a .38.