Robert A. HAGGENJOS, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 182S22.

Supreme Court of Indiana.

Nov. 4, 1982.

Rehearing Denied Jan. 21, 1983.

Frank J. Gray, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted after trial by jury of Attempted Murder, Ind. Code § 35–41–5–1; § 35–42–1–1 (Burns 1979) and sentenced to twenty-five (25) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in admitting evidence of marital discord between Defendant and the victim, his ex-wife.

(2) Whether alleged misconduct of the prosecutor denied Defendant fundamental due process.

(3) Whether the trial court erred in failing to declare a mistrial.

(4) Whether the trial court erred in refusing Defendant's tendered instructions respecting "premeditated malice."

(5) Whether the trial court erred in its conclusions that the statute precludes suspension of a sentence imposed upon a conviction for Attempted Murder.

The evidence most favorable to the State reveals that Defendant wounded his ex-wife with a gun in a parking lot at about 1:00 a.m. on November 29, 1980. Surgery was required to remove the bullets. After their divorce Defendant became angry when his ex-wife went out on dates. The shooting incident occurred as the victim was on her way home from one such date. At trial Defendant admitted his presence at the scene, remembered nothing about the shooting, and denied that he intended to kill her.

\* \* \* \* \* \*

## ISSUE I

Defendant first contends that the trial court erred in allowing the ex-wife to testify about Defendant's behavior after she filed her petition for dissolution. She related problems concerning Defendant's visiting the couple's child and that she had had to call the police and to go to court because of Defendant's conduct. In one instance, after she had obtained a restraining order, Defendant came to her home at night and banged on the door, claiming that he wanted to talk. He had been drinking, and shortly after entering the house, he assaulted her. This pattern of anger and resentment continued after the divorce, particularly with respect to her seeing other men:

"Q. And did you encounter any difficulty with Mr. Haggenjos as a result of your social activities?

"A. Well, I didn't feel that I could go out with anyone because he was— he would get very angry with me. He kept telling me that I had no right to do that. That—he told me that I was sinning against God, and the church, and everything by going out with another man."

Defendant claims that this testimony was not evidence of other crimes, since none of the events related therein involved a criminal conviction, and as such the evidence was not admissible to prove his intent. We do not agree. The pendency of the divorce action along with the pattern of Defendant's harrassment of the victim tends to show that he had a motive to kill her and consequently acted with the intent required to sustain a conviction for Attempted Murder. *Koerner v. State,* (1884) 98 Ind. 7, 25 (evidence of quarrels, beatings, and threats between husband and wife in a prosecution of the husband for the murder of his wife); *Binns v. State,* (1877) 57 Ind. 46, 52 (fact of pending divorce action may be competent to show state of feeling between parties in a prosecution of husband for the murder of his wife); *Kelley v. State,* (1958) 98 Ga.App. 324, 105 S.E.2d 798 (evidence tending to show jealousy as a motive for a homicide); *State v. Noyes,* (1960) 69 Wash.2d 441, 446, 418 P.2d 471, 475, *cert. denied,* (1967) 386 U.S. 968, 87 S.Ct. 1053, 18 L.Ed.2d 122 (evidence of Defendant's quarrels with his wife over her relationships with other men). We find no error in the admission of the ex-wife's testimony.

## ISSUE II

■ Defendant next raises two claimed instances of prosecutorial misconduct, which, when coupled with the prosecutor's attempt to interject inadmissible evidence in Issue I, supra, assertedly resulted in a denial of due process.

Defendant contends that the victim was improperly allowed to relate the nature of her surgery. For the purpose of showing serious bodily injury, the trial court permitted the victim to testify that she underwent exploratory surgery which disclosed the damage done by one bullet. She also had two other operations, one to remove a bullet from her neck and another to repair damage done to two of her fingers. The testimony was elicited in a straightforward manner with no attempt by the State to embellish upon gory details. The victim's testimony communicated the nature and extent of the wounds inflicted upon her, which is relevant to the issue of Defendant's intent to commit Murder. *Gayer v. State,* (1965) 247 Ind. 113, 116–17, 210 N.E.2d 852, 855; *Washington v. State,* (1979) Ind.App., 379 N.E.2d 1032, 1035; *Smith v. State,* (1975) 165 Ind.App. 37, 42, 330 N.E.2d 384, 387 (trans. denied).

■ Also over objection the victim testified that she left the hospital on the "8th day." In *Arnett v. State,* (1969) 251 Ind. 685, 689, 244 N.E.2d 912, 914 a majority of this Court held that, "Where, as here, intent to kill is a material issue of the crime of which the Appellant was charged, evidence of the length of the victim's hospital confinement may be admitted in evidence for the consideration of the jury in determining Appellant's intent." Consequently, we find no error in the admission of this testimony.

■ Defendant also notes misconduct in the prosecutor's closing argument; however, upon Defendant's objection, the trial court instructed the jury to disregard the Prosecutor's comment, " * * * and to some extent, the decision that you make is going to be the guideline and the standard for behavior * * *." Defendant has made no attempt to show that the admonition did not cure the error, if any. *See Morse v. State,* (1980) Ind., 413 N.E.2d 885, 889; *Page v. State,* (1980) Ind., 410 N.E.2d 1304, 1307. We find no error in the trial court's rulings, and the record does not show that the Prosecutor's conduct denied Defendant due process.

## ISSUE III

■ At trial a police officer testified about what occurred when Defendant was arrested and taken to the police station:

"Q. What else did you do?

"A. Advised the Detective Bureau that I had him in custody, and I advised him of his rights, asked him if he wanted to make a statement. . .

"Mr. GRAY: Judge, we're going to object and ask if we can approach the bench. * * * Judge, the Defendant moves for a mistrial. The United States Supreme Court has indicated that the mere fact that a person is read his rights, and then indicates that he is exercising his rights is impermissible to be introduced to any Case-In-Chief for which the Defendant is being tried in a criminal case. Based on this witness's testimony, he has now indicated to the Jury that he was advised of his rights, and that to leave the chapter unfinished as what happens—because the police report clearly indicates that the Defendant is going to say that he had nothing to say and he exercised his rights—is grounds for a mistrial."

Defendant's United States Supreme Court case is *Miranda v. Arizona,* (1966) 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1625 n. 37, 16 L.Ed.2d 694, 720 n. 37, which supports his representation to the trial court. The State counters that no reference was made to whether Defendant invoked his right to remain silent, and even if there had been such a reference, an admonition to the jury would have cured it, citing *Grimes v. State,* (1972) 258 Ind. 257, 264, 280 N.E.2d 575, 579.

Defendant's Reply Brief contains the following, which more completely details the argument on appeal:

"The State's argument that the issue of the improper questioning was irrelevant fails to identify the fact that it did not arise because the defendant objected to its introduction. It was the conduct that *forced* the defendant to object to the impending objectionable statement that is being appealed from, not the fact that the court sustained the objection."

The record shows no "impending objectionable statement." The witness was asked to relate his actions; not the defendant's. We cannot assume, as Defendant must have us do in order to rule in his favor, that the witness would volunteer information not responsive to the question asked. We find no error in the trial court's denial of the motion for a mistrial.

### ISSUE IV

■ Defendant next contends that the trial court erred in refusing two tendered instructions, which explained the concept and requirement of "premeditated malice" as an element of the offense charged and informed the jury that "Malice is an essential element in the crime of murder." He argues without citation to relevant authority that malice is still relevant to the offense of Attempted Murder despite the new Penal Code definition of Murder, Ind.Code § 35–42–1–1 (Burns 1979), which no longer contains malice as an element. In his Reply Brief Defendant changes his line of argument:

"While the State correctly states that malice is no longer an element of the crime of murder, it overlooks the fact that an 'attempt' is a specific intent crime and requires more definition than a general intent crime. *Zickefoose v. State,* (1979) Ind., 388 N.E.2d 507; *Rhode v. State,* (1979) Ind.App., 391 N.E.2d 666. Thus, instructions on the state of mind described in the instruction on premeditated malice would have allowed the jury to determine what the true definition of intentionally was in the common and statutory law of the State of Indiana."

Defendant's tendered instructions did not request a definition of specific intent or mention that concept. The record shows that the trial court gave final instructions, without objection, which explained the elements of attempted murder based upon the elements contained in the current Attempt and Murder statutes, in which malice is no longer an element. In light of the statutory definition of the charged offense, Defendant's tendered instructions upon the subject of malice would only have confused the jury by injecting an irrelevant issue into the case; consequently, we find no error in their refusal. *See Hashfield v. State,* (1965) 247 Ind. 95, 103–04, 210 N.E.2d

429, 434–35, *cert. denied*, (1966) 384 U.S. 921, 86 S.Ct. 1373, 16 L.Ed.2d 442. *Cf. Krauss v. State,* (1947) 225 Ind. 195, 199, 73 N.E.2d 676, 677 (the giving of a correct instruction defining murder does not correct error in the giving of an instruction which eliminated the necessity of proving malice and intent.); *Miller v. State,* (1944) 223 Ind. 50, 56–57, 58 N.E.2d 114, 117 (Same).

## ISSUE V

Lastly, Defendant contends that the trial court erred in its belief that a sentence imposed upon a conviction for Attempted Murder was not suspendable under Ind. Code § 35–50–2–2 (Burns 1979), which precludes suspension of a sentence upon a conviction for Murder. The trial court expressed an opinion that the sentence would not be suspendable but nevertheless invited Defendant to present evidence upon the issue. Assuming that the trial court's interpretation of the statute influenced its choice of a sentence of twenty-five (25) years imprisonment, which is five years less than the presumptive sentence, we find no error.

Defendant argues that Murder and Attempted Murder are not one and the same, citing *Smith v. State,* (1981) Ind.App., 427 N.E.2d 11, and therefore, since the offense of Attempt is not among the nonsuspendable offenses listed in Ind.Code § 35–50–2–2, the case should be remanded to allow the trial court to re-sentence Defendant free of its erroneous belief. In the recent case of *Kee v. State,* (1982) Ind., 438 N.E.2d 993, we rejected a similar argument concerning the applicability of Duress as a defense to Attempted Murder:

"Defendant argues that although the defense of duress is not available upon a charge defined in Ind.Code 35–42 (which includes murder) it is, nevertheless, available upon a charge of attempted murder. He reasons that the statute which defines duress and makes it available generally, excludes its use only specifically. One specific exclusion is as to a 'person who: * * * committed an offense against the

person as defined in I.C. 35–42.' He further argues that the crime of attempted murder is not defined in I.C. 35–42, but in I.C. 35–41–5–1 and that, therefore, the exclusion does not apply. *The fallacy lies in the conclusion that I.C. 35–41–5–1 defines the crime of attempted murder which, standing alone, it does not. It is definitive of the crime charged only when read in conjunction with I.C. 35–42–1–1 (Murder)."* At 994. (Emphasis added).

Similarly, when Ind.Code § 35–50–2–2 speaks of Murder, it also refers to Attempted Murder. We find no error in the trial court's sentencing of Defendant.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and PIVARNIK, J., concur.

HUNTER, J., concurs in result with opinion.

DeBRULER, J., concurs and dissents with opinion.

HUNTER, Justice, concurring in result.

I am unable to join the majority's conclusion that the victim properly was permitted to relate the nature of her surgery and the length of her confinement in hospital. Based on the evidence presented, however, which included both direct and circumstantial evidence of defendant's guilt, I would affirm the judgment entered against defendant on the basis that any error which arose by virtue of the prosecutor's evocation of the testimony was harmless. Consequently, I concur in the result reached by the majority.

The validity of the evidentiary rule that the extent of a victim's injuries is admissible to prove an intent to kill is not at issue. *Gayer v. State,* (1965) 247 Ind. 113, 210 N.E.2d 852; *Washington v. State,* (1978) Ind.App., 379 N.E.2d 1032; *Smith v. State,* (1975) 165 Ind.App. 37, 330 N.E.2d 384. Often it has been recognized that the victim, eyewitnesses, and physicians may testify to the extent and nature of the injuries. *Id.* Concomitantly, photographs of wounds may

be admitted to establish the extent of injuries. *Bond v. State,* (1980) Ind., 403 N.E.2d 812; *Bates v. State,* (1977) 267 Ind. 8, 366 N.E.2d 659.

Given the availability and adequacy of these evidentiary methods to establish the extent of a victim's injuries, it does not follow that the curative measures and hospital confinement necessitated by the injuries should also be admitted. *Assuming* that minimal probative value could be attached to either matter in any particular case, that supposition does not justify the conclusion that the testimony is admissible. It is a fundamental precept of our rules of evidence that notwithstanding the relevance of particular evidence, its admissibility is also dependent upon countervailing considerations—among which is the question whether the probative value of the evidence is outweighed by its potential for unduly arousing the jurors' prejudice and sympathy. *Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482; *Kiefer v. State,* (1958) 239 Ind. 103, 153 N.E.2d 899; *Hawkins v. State,* (1941) 219 Ind. 116, 37 N.E.2d 79; 6 WIGMORE ON EVIDENCE § 1904 (Chadbourn Rev.1976); M. Seidman, THE LAW OF EVIDENCE IN INDIANA p. 65 (1977).

The probative value in permitting a victim to relate the nature of surgery necessitated by injuries is attenuated at best. Its materiality follows from the existence of the injuries, of course; once the injuries are described or revealed by photographs, or both, a description of the nature of the surgery is proof which is cumulative in nature. Against this minimal probative value must be measured the significant potential for prejudice and sympathy to be interposed into the fact-finding process if *the victim* is permitted to take the stand and relate the nature of her surgery. Given the attenuated nature of its materiality and the fact that its potential for prejudice far outweighs its relevance, the testimony regarding the nature of surgery should not be admitted. *Compare, People v. Nickolopoulos,* (1962) 25 Ill.2d 451, 185 N.E.2d 209.

The majority recognizes the great potential for prejudice in such testimony, for it characterizes the testimony in this case as "elicited in a straightforward manner with no attempt by the State to embellish upon gory details." *Majority Opinion, supra.* The language cannot be overlooked, for notwithstanding the inherent ambiguity of the words employed, the import of the terms defines the limits of admissibility. Any evidence concerning the nature of surgery necessitated by injuries, if it be admitted at all, should be confined to a description couched in objective medical terms.

Just as it would be immaterial and prejudicial for a victim to relate the "gory" details of surgery and convalescence, so also should the length of a victim's confinement in a hospital be inadmissible. It is true that in *Arnett v. State,* (1969) 251 Ind. 685, 244 N.E.2d 912 (Jackson and Hunter, JJ., dissenting), the majority of this Court did hold that evidence of the length of the victim's hospital confinement was admissible to establish defendant's intent. A minority of this Court took the position that the amount of time the victim spent in various hospitals was not relevant to establish defendant's intent at the time he inflicted the wounds. It was recognized in those dissenting opinions that the length of hospitalization in any particular instance may be the product of variables unrelated to the intent of the defendant; likewise, it was acknowledged that revelations of a lengthy period of hospitalization endured by a victim was rife with potential for arousing the twin passions of jurors—sympathy for the victim and prejudice toward the defendant. *Id.,* 251 Ind. at 696, 244 N.E.2d at 918 (Jackson and Hunter, JJ., dissenting). I reiterate my position in *Arnett* that whatever minimal relevance the length of a victim's hospitalization may have to a defendant's intent, that evidence should not be admissible to prove that fact due to its prejudicial impact on the minds of jurors.

It must be conceded that, as in the instant case, it is not necessary for the state to introduce evidence of the victim's surgery and length of hospitalization as a vehicle to prove the extent of injuries suffered and, in turn, the defendant's intent. That

**436**

evidence can be proved by a verbal description or photographic display of the wounds. The only additional ingredient to be gained by a victim's recitation of the nature of surgery and the length of hospital confinement is an emotional gloss. Our rules of evidence are designed to preclude that approach to the fact-finding process.

For all the foregoing reasons, I am unable to join the majority's resolution of Issue II. Based on the direct and circumstantial evidence of defendant's guilt, however, I conclude the error was harmless. Consequently, I concur in the result ultimately reached by the majority.

I concur in result.

DeBRULER, Justice, concurring and dissenting.

I concur in the resolution of Issues I, II, III, IV, and dissent on Issue V.

Pertinent to this appeal, Ind.Code § 35–50–2–2 authorized the sentencing judge below to suspend any part of a sentence for a felony unless "the felony committed was murder (I.C. 35–42–1–1)". The majority concludes that by this reference to murder, the Legislature intended to proscribe attempted murder also. The express reference here is to "murder (I.C. 35–42–1–1)", which means to me the distinct and substantive crime of murder established in Ind. Code § 35–42–1–1. As we said in *Kee v. State,* (1982) Ind., 438 N.E.2d 993, the crime of attempted murder is defined by reading Ind.Code § 35–41–5–1, the general attempt statute, in conjunction with Ind.Code § 35–42–1–1, the murder statute. It may be that attempted murder is an offense defined in major part by Ind.Code § 35–42–1–1, but it is clear to me that it is not "murder (I.C. 35–42–1–1)". I would therefore affirm the conviction but remand to the trial court for resentencing and in so doing mandate that the trial court give due regard to the suspendable nature of the sentence for attempted murder.