**Dwight Wayne McMURRY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 683 S 246.

Supreme Court of Indiana.

Sept. 12, 1984.

Marc H. Donaldson, Carroll & Donaldson, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Dwight Wayne McMurry, was convicted by a jury of attempted murder, a Class A felony, Ind.Code § 35–42–1–1 (Burns 1984 Supp.), Ind.Code § 35–41–5–1 (Burns 1979 Repl.), and was sentenced to the Indiana Department of Correction for a period of thirty-five years. He raises the following three issues in this direct appeal:

1. Whether there was sufficient evidence to support the verdict of the jury;

2. Whether the trial court erred in allowing the victim to testify about his medical care and prognosis for recovery; and

3. Whether defendant was denied a fair and impartial trial due to the alleged misconduct of one of the jurors.

A brief summary of the facts from the record most favorable to the state shows that defendant and his brother, William, went to the victim's home on the night of January 1, 1980. The victim, Walter Martin, lived next door to the home of defendant's mother, Louise Rhinehart, and there had been a previous confrontation between defendant and Martin over an incident where Rhinehart's dog had been shot. On the night of January 1, 1980, defendant knocked on the front door of Martin's home and asked Martin to come outside to talk to him. Several guests of Martin were inside the house. When Martin stepped out into the yard, defendant, who had been drinking, accused the victim of shooting his mother's dog and claimed that the rifle he had used was still in the trunk of Martin's car. Martin denied shooting the dog and said, "Come on, I will show you there is nothing in the trunk of my car but a tool box."

As the two men were walking toward Martin's car, defendant drew a pistol and said, "If you want to play guns, I can play guns, too." Then defendant cocked the pistol and held it up to Martin's face to "make him look down the barrel." The two men stood still for approximately thirty seconds, then defendant fired the pistol and the bullet entered Martin's head. One of Martin's guests came to the door of the house and looked outside. Defendant looked at her and then pointed the pistol toward her. The guest moved away from the door and heard a second shot. Defendant's brother then lunged toward defendant and attempted to wrestle the pistol away from him, but defendant broke free and ran back to his mother's house. He was arrested by the police as he attempted to flee the area.

## I.

Defendant first alleges there was not sufficient evidence on the element of the intent to kill to support the jury's verdict. Defendant testified that he only intended to scare Martin and that the gun went off accidentally. He also testified that the second shot happened accidentally while he was lowering the pistol. Even Martin told defendant's brother that he thought defendant had just intended to scare him. Defendant further points out that there was no evidence of any plan, scheme or design on his part to kill the victim. Our standard for reviewing sufficiency claims is firmly established; on appeal the reviewing court does not weigh the evidence or judge credibility. We are constrained to consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *McNary v. State,* (1984) Ind., 460 N.E.2d 145; *Tunstall v. State,* (1983) Ind., 451 N.E.2d 1077; *Fielden v. State,* (1982) Ind., 437 N.E.2d 986.

The record here shows that defendant was upset with the victim because of an incident involving the shooting of his mother's dog. He intentionally went to the victim's house with a loaded pistol and then cocked the pistol and placed it right at the face of the victim. It is well settled that intent to kill can be inferred from the intentional use of a deadly weapon in a manner reasonably calculated to produce death or great bodily harm. *Davenport v. State,* (1984) Ind., 464 N.E.2d 1302; *Vasseur v. State,* (1982) Ind., 430 N.E.2d 1157; *Jackson v. State,* (1981) Ind., 426 N.E.2d 685. The jury may accept or reject the testimony of any witness and was not bound to believe the statements that defendant did not intend to kill the victim. *Jackson v. State; Lock v. State,* (1980) 273 Ind. 315, 403 N.E.2d 1360; *Sypniewski v. State,*

(1977) 267 Ind. 224, 368 N.E.2d 1359. There was substantial evidence of probative value from which the jury could have concluded that defendant intentionally attempted to kill the victim. There was no error on this issue.

## II.

Defendant next contends that the trial court erred in allowing the victim to testify about his medical care and the prognosis for his recovery. He argues that this testimony was not relevant and was prejudicial as it inflamed the passions of the jury and created excessive sympathy for the victim. The record shows that the victim told the jury which hospitals he was taken to after he was shot. Before any further questions about the nature of the wound or the extent of treatment were allowed, the court held a hearing out of the presence of the jury to determine the exact nature of the testimony the state proposed to present. The court then set specific parameters on the victim's testimony which limited it to the facts about the nature and extent of his wound and his present condition before the jury returned. The court did not allow the victim to testify about details of the necessary surgery or any adverse side effects of the surgery.

The jury then heard the victim testify about his current condition and the surgery which was necessary to remove the bullet from his head. The victim also testified about a second operation which was necessary to replace some bone which had been removed during the first surgery. The testimony was elicited in a straightforward manner and did not embellish upon any medical theories or gory details. It is well settled that the character and severity of the victim's wounds are relevant to the issue of defendant's intent to commit murder. *Haggenjos v. State,* (1982) Ind., 441 N.E.2d 430; *Arnett v. State,* (1969) 251 Ind. 685, 244 N.E.2d 912.[1]

1. The majority of this Court has held that even evidence of the length of the victim's hospital confinement may be admitted for the consideration of the jury in determining an accused's intent to kill. *Arnett v. State,* 251 Ind. at 689, 244 N.E.2d at 914 (Hunter, J., dissenting).

■ The victim's testimony here established the serious and life-threatening nature of the wound. The victim did not detail the length of his hospitalization but did testify briefly about his physical disabilities which were a result of the gunshot wound. The testimony here was necessary to establish the character and severity of the wound and there was no error in its admission.

### III.

■ Defendant finally argues that he was denied his right to a fair and impartial jury because of the alleged misconduct of one juror. The record shows that three relatives and friends of defendant testified that they saw one juror, Dorothy Pazdur, talking to a woman outside of the courtroom, prior to jury selection and that this woman was later identified as the victim's aunt. On voir dire, Pazdur denied knowing the victim, the defendant, or their families.

At a hearing on defendant's motion to correct error, Pazdur explained that she had arrived a little early on the morning of jury selection and sat on a bench in the hall. Another woman, who was a stranger to Pazdur, also sat down and started talking to her about the weather, where she lived, and her children. Pazdur explained that after a few minutes, the other woman got up and went over to a group of people which included the victim, saying "I'm his aunt." At one point Pazdur answered the following question:

Q. "Isn't it true the person you were talking to was the complaining witness' [sic] aunt?"

A. "She said she was his aunt after we were talking, but we didn't talk about the case. She said she was—I don't know—training to be a lawyer and she came to the courthouse all the time and listened to different cases."

■ We find nothing in the record to show that Pazdur was not truthful on voir dire when she stated that she did not know the victim or his family. Certainly, a few minutes of conversation on trivialities do not mean Pazdur "knew" the victim's aunt. There was no evidence that Pazdur ever discussed the instant case with the victim's aunt or anyone else. We can disturb a verdict of guilty on account of the alleged misconduct of a juror only when it is shown that such misconduct was prejudicial to the rights of the defendant. *Sceifers v. State,* (1978) 267 Ind. 687, 373 N.E.2d 131; *Myers v. State,* (1960) 240 Ind. 641, 168 N.E.2d 220. There is no evidence here to contradict Pazdur's statement that she did not know the victim or his family or show that she could not give a fair and impartial verdict. We find no showing of prejudice to defendant which would require a reversal of the guilty verdict.

For all the foregoing reasons there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.

---

While the author of this opinion does not agree with that position, the testimony in the instant case does not include details about the length of the hospital stay, but properly focuses on the nature and extent of the victim's wound.