Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 23 2014, 8:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JASSEL LOPEZ,                             )
                                         )
    Appellant-Defendant,                 )
                                         )
        vs.                          )    No. 49A02-1403-CR-183
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.                  )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1304-FB-23413

**October 23, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Jassel Lopez (Lopez), appeals his six-year sentence after he pled guilty to attempted armed robbery, a Class B felony, Ind. Code §§ 35-42-5-1; -41-5-1.

We affirm.

## ISSUES

Lopez raises two issues on appeal which we restate as follows:

(1) Whether the trial court erred in finding that his sentence could not be served in a community corrections program; and

(2) Whether Lopez's sentence is inappropriate.

## FACTS AND PROCEDURAL HISTORY

On March 27, 2013, Stephen Droste (Droste) was asked to deliver pizza to 8919 Autumn Woods Drive, Apartment #A, Indianapolis, Indiana. When he arrived at the location, he noticed an individual leering outside the apartment building, and after naming the address, Droste asked the individual if he was at the right place. The individual informed Droste that he was in the correct address so Droste entered the apartment building. Droste knocked on the apartment doors, and out of the three apartment units, only one tenant answered the door. Droste learned from the tenant that he was at the right address, but Apartment #A was nonexistent. Based on that, Droste left the building and walked to his vehicle. Just as he was about to enter his vehicle, seventeen-year-old Lopez pointed a gun

at the back of Droste's head and he told Droste, "[G]ive it up." (Transcript. p. 20). Droste turned, pushed the gun away, and a struggle for the gun ensued. A second male, Lopez's accomplice, came to assist Lopez in the struggle, but when Droste started screaming for help, Lopez and the other male fled to a silver four-door vehicle. Similarly, the person who Droste had first seen outside the apartment building, also ran toward the same vehicle. Lopez sped away from the scene, but as he was leaving the parking lot, his car hit a large decorative boulder causing it to incur front end damage. Droste also entered his vehicle and followed Lopez's car. While following Lopez's vehicle, he called the police and gave a description of the vehicle. Droste lost sight of Lopez's car when it turned westbound on East 86th Street.

Later that day, the police found Lopez's car. When Detective Harry Dunn (Detective Dunn) of the Indianapolis Metropolitan Police Department arrived at the location, he observed that the vehicle had front end damage, thus matching Droste's description of the vehicle. After running the license plate number, the vehicle was traced back to Lopez's grandparents (Grandparents). Detective Dunn contacted the Grandparents who explained that Lopez had their car in his possession. Thereafter, Detective Dunn drove to the Grandparents' house and obtained a consent form to search the vehicle. While Detective Dunn was still at the Grandparents house, Grandparents called Lopez's father and asked him to check if his guns were in his house. Lopez's father stated that they were missing. Upon searching the vehicle, Detective Dunn found two guns, and the serial numbers matched the missing guns registered to Lopez's father.

On April 5, 2013, accompanied by his parents, Lopez arrived at the police station. After signing a waiver of his rights form, Lopez told Detective Dunn that on the day of the robbery, he was at the mall with a friend, he drove to his father's house, took his father's guns, placed a fake pizza order and offered a phony address. Lopez further told Detective Dunn that when Droste exited the apartment building, he attempted to rob him at gunpoint. Also, Lopez stated that he acted alone.

On April 12, 2013, the State filed an Information charging Lopez with Count I, attempted robbery, a Class B felony, I.C. §§ 35-42-5-1; -41-5-1, and Count II, criminal gang activity, a Class D felony, I.C. § 35-45-9-3. On January 23, 2014, Lopez entered into a plea agreement where he admitted to the attempted armed robbery charge. In exchange, the State dismissed the criminal gang activity charge and capped Lopez's executed sentence at six years. On February 18, 2014, the trial court held a guilty plea hearing at which Lopez pled guilty to attempted armed robbery and admitted the factual basis for his plea. As mitigating factors, the trial court found that Lopez had no prior criminal history, exhibited remorse, and took responsibility for the crime by pleading guilty. The trial court sentenced Lopez to ten years with six years executed, four years suspended, and "one day and one day only" since Lopez would be "deported." (Tr. pp. 42-43).

Lopez now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Community Corrections*

Lopez argues that the trial court abused its discretion because it came to an "erroneous conclusion that it was prohibited from ordering [his] sentence [] be served through [c]ommunity [c]orrections." (Appellant's Br. p. 4).[1] The State counters Lopez's argument by stating that had the trial court utilized the alternative sentencing of placing him in community corrections, it would have resulted in a suspension of Lopez's six-year sentence. We agree.

Indiana Code section 35-38-2.6-3(a) (2013) governs the placement of offenders in community corrections and provides in part that a trial court "*may* at the time of sentencing, suspend the sentence and order a person to be placed in a community corrections program as an alternative to commitment to the Department of Correction." (emphasis added). In this regard, placing Lopez in community corrections would suggest a suspension of his sentence. *See Treece v. State*, 10 N.E.3d 52, 60 n.4 (Ind. Ct. App. 2014), *trans. denied* (noting that a court's decision to utilize that alternative should result in a corresponding suspension of the defendant's sentence).

---

[1] Lopez's reliance on *Barker v. State*, 994 N.E.2d 306, 309 (Ind. Ct. App. 2013) *trans. denied*, is without merit. In *Barker*, the State charged Barker with: neglect of a dependent causing death, a Class A felony; battery causing death, a Class A felony; and neglect of a dependent, a Class D felony. *Id*. Barker pled guilty to Class A felony neglect of a dependent causing death, and in exchange, the State agreed to dismiss the remaining charges and capped the executed portion of his sentence at forty years. *Id*. In the end, the trial court sentenced Barker to forty-five years, with forty years executed and the remainder suspended to probation, with 120 days to be served on home detention. *Id*. On appeal, we conclude that Barker's 120-day home detention was part of his executed sentence and that by ordering it in addition to his forty-year commitment to the DOC, the trial court exceeded the forty-year cap on the executed portion of his sentence. *Id*. at 314.

In the instant case, Lopez was sentenced to serve a nonsuspendable six-year sentence in the DOC with four years suspended. Had the trial court ordered Lopez to serve the suspended portion of his sentence in home detention, the trial court would have exceeded the six-year cap outlined in his plea agreement. Be that as it may, we find Lopez's application of *Barker* erroneous. The holding in *Barker* would prohibit a trial court from adding home detention for the suspended portion of Lopez's sentence; it does not give the trial court authority to order home detention as an alternative to the DOC.

5

Furthermore, we note that the six-year minimum sentence for armed robbery is nonsuspendable. *See* I.C. § 35-50-2-2(b)(4)(I) (2013). Notably, though the instant case relates to an attempted armed robbery offense, this court has previously interpreted I.C. § 35-50-2-2(b)(4)(I) (2013) to apply to attempted armed robbery even though the statutory language does not explicitly address attempt crimes. *See Strong v. State*, 903 N.E.2d 164, 165-66 (Ind. Ct. App. 2009) (citing *Haggenjos v. State*, 441 N.E.2d 430 (Ind. 1982), *reh'g denied*)) *trans. denied*. In *Haggenjos*, our supreme court declared that "murder" in I.C. § 35-50-2-2(b)(4)(A) also refers to attempted murder. *Haggenjos*, 441 N.E.2d at 434. Similarly, the *Strong* court concluded Ind. Code § 35-50-2-2(b)(4)(I) applied to attempted robbery with a deadly weapon. Following *Haggenjos* and *Strong*, we must uphold the trial court's determination that the six-year sentence for attempted armed robbery is nonsuspendable. Because ordering Lopez to serve his six-year sentence in community corrections would result in a suspension of his sentence, we find that the trial court did not err in finding that his sentence could not be served in community corrections.

## II. *Inappropriate Sentence*

Lastly, Lopez argues that his sentence was inappropriate in light of the nature of the offense and his character.

Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade the appellate court that his or her sentence is

inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "Ultimately the length of the aggregate sentence and how it is to be served are the issues that matter." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Id.*

The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). At the time of his sentencing, the advisory sentence for a Class B felony was ten years, with a minimum of six and a maximum of twenty years. Here, the trial court imposed a ten-year sentence with six years executed, four years suspended, and one day of probation in anticipation that Lopez would be deported after serving his sentence.

As for the nature of the offense, Lopez discredits the seriousness of his crime by stating that "the robbery was not successful because the victim grabbed the weapon and screamed for help. This suggests a very amateur attempt to carry out a robbery." (Appellant's Br. p. 10). The State concedes that his offense was not egregious. Though the crime may not have seemed more dreadful than most armed robbery attempts, it was still a violent crime. On the day of the robbery, Lopez drove to his father's house, stole two guns, phoned Pizza Hut where he placed an order and offered a fake address. Contrary to his assertion that he acted alone, Lopez and his friends waited for Droste in the parking lot. When Droste exited the apartment building, Lopez approached Droste from behind, pointed

his gun at the back of Droste's head, and attempted to rob him. Despite his assertion that the robbery was amateurish, Lopez was armed with a deadly weapon, and he would have posed a great danger to Droste had the gun gone off. At trial, Droste testified that he suffered "two badly sprained fingers" and wore "splints on both [] fingers for two months." (Tr. p. 28).

Turning to Lopez's character, we find few redeeming qualities. Lopez was born in Mexico, moved to the United States at age 3, and to Indiana at age 8. Lopez had a relatively good upbringing. Also, Lopez had no prior contact with the justice system, and this attempted armed robbery conviction was Lopez's first felony conviction and, indeed, his first conviction of any type. At the time he committed the offense, Lopez was seventeen-years-old. The trial court considered Lopez's age and his nonexistent criminal history. Even with the mitigating factors, the trial court found Lopez demonstrated extremely poor judgment when he attempted to rob Droste at gun point. Furthermore, Lopez did not lead a law-abiding life. The Pre-Sentencing Investigation report (PSI) indicated that Lopez first tried THC at age 12, and has used it on a daily basis and that fact reflects poorly on his character. Although Lopez expressed remorse for his actions and entered into a plea agreement, the State dismissed his criminal gang activity charge and capped his executed sentence to six-years. He should not now be given an additional benefit in a further reduction of his sentence.

Lastly, Lopez argues he should receive a lesser sentence because he is likely to be deported after he serves his sentence. Specifically, Lopez states that for "the [DOC] to house and feed [him] seems to be a waste of [the] [S]tate's resources. If he is going to be

deported, it would [be] wiser to let [that] process take its course rather than expend the money of the taxpayers of this [S]tate." (Appellant's Br. p. 11). Because Lopez's immigration status is unrelated to either the nature of the offenses or his character, we reject his argument that his imminent deportation by the Immigration and Naturalization Service after he serves his six-year sentence should trigger a downward revision of his sentence.

Given the nature of the offense and his character, we find that the six-year sentence is appropriate.

## CONCLUSION

Based on the foregoing, we conclude that (1) the trial court correctly concluded that Lopez was not eligible to serve his executed sentence in community corrections; and (2) Lopez's six-year sentence is appropriate.

Affirmed.

MATHIAS, J. and CRONE, J. concur