**Robert J. PIERSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49S00–8708–CR–741.**

Supreme Court of Indiana.

Oct. 5, 1988.

Richard D. Gilroy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A bench trial resulted in the conviction of appellant of Attempted Robbery, a Class B felony, and Attempted Murder, a Class A felony. Sentences of thirty (30) years and fifty (50) years respectively were imposed to run concurrently.

The facts are: On April 26, 1986, Dwight L. Peavey was engaged in the newspaper business as a distribution manager for the *Indianapolis Star* and *News.* Mr. Peavey's office was located in a small building near Garfield Park on Shelby Street in Indianapolis. He was in his office with Glenn Scott, Jerry Danner, and Wayne Morris, a security guard for a local private security company.

Appellant came to the door of the office and asked if Billy were there (it later turned out he was inquiring about his son). When advised that Billy was not there, he

produced an automatic pistol and told Peavey to give him all of his money. Security officer Morris drew his pistol and told appellant to put his hands up. At that point, appellant and the security officer exchanged shots. Appellant sustained several wounds; the security officer, however, was not injured. Appellant was captured at the scene and taken to the hospital where extensive medical attention was required to treat his wounds.

Prior to trial, appellant filed a suggestion of insanity, pursuant to which the trial judge appointed two physicians to examine appellant. No further mention was made by appellant or his counsel concerning any intended defense of insanity.

■ Appellant first takes the position that the State and the trial judge should have taken for granted that he intended to interpose the defense of insanity because the court had in fact appointed physicians as required by Ind.Code § 35–36–2–1. He contends that he was entitled to rely upon the mandate of the statute that the physicians were to testify following the presentation of evidence by the State and the defense and further that the statute permits both the State and the defense to cross-examine the doctors. He thus contends the trial court erred in refusing to call the doctors as witnesses following the presentation of evidence by the State and the defense.

There is no question that the statute sets forth such a requirement and certainly had appellant presented any evidence of insanity the court would have erred in failing to call the physicians as witnesses. However, even if we would assume for the sake of argument that the court erred, in any event we must determine whether or not such error would have been reversible error under the circumstances of the case.

In the case of *Henderson v. State* (1954), 233 Ind. 598, 602, 603, 122 N.E.2d 340, 342, this Court stated:

"Before the appellant would be entitled to a reversal, it would be incumbent upon him to show affirmatively by the record that there was error prejudicial to his substantial rights."

The Court went on to say:

"Technical errors or defects which do not prejudice a defendant's rights will not work a reversal." Id. at 603, 122 N.E.2d at 342.

When we examine the record in this case, we find the following: The examining physicians each filed a written report with the court, each of which was of course made available to appellant. In each report, the physicians found appellant to be sane at the time of the examination. One of the physicians also stated that in his opinion appellant was sane at the time of the commission of the crime. The other physician stated that he could not form an opinion as to appellant's sanity at the time of the commission of the crime absent information as to how much alcohol or drugs he had ingested just prior to that time.

Although appellant now claims it is that physician who should have been subject to cross-examination by him concerning his sanity at the time of the commission of the crime, we find nothing in this record to indicate the amount of alcohol or drugs which might have been ingested by appellant prior to the offense, which fact would of course have been necessary for meaningful cross-examination of the doctor on that subject.

We further find that the testimony of appellant was lucid and quite candid as to his conduct during the offense. He readily admitted that he came to the office with the purpose in mind of robbery and that he produced a loaded gun and demanded money. Although his account of subsequent events does not exactly coincide with the accounts given by other witnesses, he nevertheless gave a lucid description of exactly what happened, stated that he never lost consciousness, and described each wound he received and his version of the manner in which he received the wound. There is no evidence in this record to indicate that appellant was anything but lucid during the entire affair.

Given this set of circumstances, coupled with the fact that there was no jury in this

case—that it was being tried by a trial judge who had full access to the reports written by the doctors and had listened to the evidence presented by the State and appellant—we fail to see what possible evidence could have been elicited upon direct or cross-examination of the physicians that would have aided appellant in the contention he now makes that he was insane at the time of the occurrence.

Thus, even assuming for the sake of argument that the trial judge technically erred in failing to call the physicians as witnesses pursuant to the statute, it becomes apparent that appellant fails to show that he was prejudiced by such error.

■ Appellant also claims there is insufficient evidence in this record to support the decision of the trial court. Under the facts of this case, this contention is almost ludicrous. Appellant claims there is no evidence to indicate that, although he brought a handgun to the location and it was discharged, he intended to kill anyone. The State properly points out that the intent to kill may be inferred from the intentional use of a deadly weapon in a manner calculated to cause injury. *McMurry v. State* (1984), Ind., 467 N.E.2d 1202; *Brewer v. State* (1983), Ind., 455 N.E.2d 324. By his own statement, he intended to rob Peavey and his exchange of gunfire with security officer Morris clearly gives rise to the inference that he intended to kill. It is only by good fortune that Officer Morris was not killed.

There is an abundance of evidence in this case to sustain the finding of the trial court.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.